**Barney Lee GREEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–93–00195–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 8, 1994.

Rehearing Overruled Dec. 8, 1994.

Discretionary Review Refused April 5, 1995.

Leslie Werner De Soliz, Houston, for appellant.

John B. Holmes, Jr., Scott A. Durfee, Colleen Barnett, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and O'CONNOR and DUGGAN, JJ.

## OPINION ON MOTION
## FOR REHEARING

O'CONNOR, Justice.

We withdraw our opinion of November 17, 1994, and issue this in its stead. This case forces us to choose between two cases on the issue regarding the proper definitions in an aggravated assault case. *Compare Sneed v. State*, 803 S.W.2d 833 (Tex.App.—Dallas 1991, pet. ref'd) (it was fundamental error to include references to conduct in the definitions) and *Mott v. State*, 835 S.W.2d 256, 259 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd) (it was not error to include references to conduct in the definitions). These two cases, which cannot be harmonized, were both denied review by the Court of Criminal Appeals.

A jury convicted the appellant, Barney Lee Green, of aggravated assault, and the trial court assessed punishment at eight-years confinement. We affirm.

### Fact Summary

There are two different versions of the events of December 4, 1990. First, the State's. The appellant, who was at the Old Water Hole Bar in Pasadena, played pool with John Drew. Drew won, and the appellant, a bad loser, started harassing him. The appellant told Drew, "I could beat the crap out of you [Drew] anytime I want." The appellant was 6'4" and weighed 300 pounds; Drew was 5'7" and weighed 175 pounds. Drew left the bar looking for a homeless man who was looking for work. When he did not find him, he returned to wait for him at the bar. When Drew walked back into the bar, the appellant gave him a hard stare. Drew then told the bartender there might be trouble with the appellant. In an attempt to resolve the situation, Drew approached the appellant and said, "You know, if there's a problem, I don't want a problem, I'm not looking for any trouble." Drew turned around to walk away and does not remember anything else. He woke up in the hospital with a major concussion and serious cuts on his face and around his ears. The State contends the appellant hit Drew, who fell to the floor. The appellant then straddled Drew and beat his head with his fist and a beer bottle. The appellant ran out of the bar when the bartender said she was calling authorities. A week after the incident, the appellant gave a statement to police in which he said that after Drew poked him in the chest, he hit and kicked him.

The appellant's version of the facts is quite different. After their game of pool, Drew went over to the appellant and began antagonizing him. Drew then went to where the appellant's two female friends were seated, claiming he was a police officer and insisting the women were intoxicated. When the appellant left to take one of the women home, Drew followed them outside and continued to harass them. Drew called the appellant an ass and leaned on the T-top of the appellant's car, setting off the car's alarm. The appellant left, but later returned. The appellant said Drew kept "cussin from the other side of the bar," telling the appellant he was going to "kick my ass." The appellant said Drew initiated the fight by striking him in the chest and then in the chin. The appellant said he defended himself by hitting Drew several times, causing him to fall to the floor. The appellant said Drew had a beer bottle in his hand, which broke on the concrete, and that Drew's wounds were self-inflicted. The appellant then straddled Drew in an attempt to restrain him, and hit him several times. Another bar patron, Tom Lewis, told the appellant to stop; the appellant then got up and helped Drew off the floor. Drew was taken to the hospital for treatment. The key difference between the State's version of the facts and the appellant's is that the appellant contends Drew initiated the fight, where the State argues the appellant started it. At trial, the appellant elaborated on the written statement he gave to the police. He said Drew hit him. He said he felt threatened by

Drew. This is the essence of the appellant's self-defense claim.

## A.

### Error in the charge

In point of error one, the appellant contends the trial court erred in its instructions the jury, and the errors (which he contends were fundamental) deprived him of a fair and impartial trial. Under this point, the appellant asserts four arguments, which we address separately.

 The appellant's counsel did not object to any of the errors at trial. A challenge to the court's charge that was not preserved by an objection at trial requires a higher level of harm than challenges that were preserved. *Gibson v. State,* 726 S.W.2d 129, 133 (Tex.Crim.App.1987) (op. on reh'g). In cases where the error was not preserved the harm to the defendant must be "egregious" *i.e.,* so harmful that the defendant was denied a "fair and impartial trial." *Id.; Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g) (established standards for reviewing harmfulness of jury charge error); *Gonzales v. State,* 838 S.W.2d 848, 865 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). In determining whether egregious harm occurred, we view the error in light of the entire jury charge, and we consider all the evidence, the argument of counsel, and any other relevant information in the record. *Bailey v. State,* 867 S.W.2d 42, 43 (Tex.Crim. App.1993); *Gonzales,* 838 S.W.2d at 865.

### 1. Culpable mental state

The appellant asserts the trial court did not instruct the jury to limit the culpable mental states to the result of the offense of aggravated assault, namely, serious bodily injury. He contends the charge authorized a conviction based solely on the finding that he intentionally or knowingly engaged in conduct that happened to cause bodily injury, when it should have authorized a conviction only if he intentionally or knowingly caused bodily injury. His position is that a result-oriented offense cannot be based solely on such a finding.

Aggravated assault requires a culpable mental state of intentionally or knowingly causing serious bodily injury to another. TEX.PENAL CODE § 22.02(a)(1) (Vernon Supp. 1994).

The applicable part of the jury charge reads:

A person acts intentionally, or with intent, with respect to the *nature of his conduct* or to a result of his conduct when it is his conscious objective or desire to *engage in the conduct* or cause the result.

A person acts knowingly, or with knowledge, with respect to the *nature of his conduct or to circumstances surrounding his conduct* when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Now, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, Barney Lee Green II, hereafter styled the defendant, heretofore on or about the 4th day of December, 1990, did then and there unlawfully, *intentionally or knowingly cause serious bodily injury to John Drew,* by striking John Drew with a bottle; or, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, Barney Lee Green II, heretofore on or about December 4, 1990, did then and there *unlawfully intentionally or knowingly cause serious bodily injury to John Drew* by striking John Drew with a bottle or his hands, then you will find the defendant guilty of aggravated assault as charged in the indictment. Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of aggravated assault.

(Emphasis added.)

In support of his argument, the appellant cites *Sneed v. State,* 803 S.W.2d 833 (Tex. App.—Dallas 1991, pet. ref'd), a case involving an aggravated assault with similar facts. In *Sneed,* the court held the charge on aggravated assault authorized the jury to find the appellant guilty if he acted intentionally

or knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct.[1] *Id.* at 834–35. The court held the definitions of intentionally and knowingly did not belong in the charge because the culpable mental states do not apply to conduct. The *Sneed* charge permitted jurors to find the accused guilty based on his conduct rather than intending or knowing the prohibited result.

The State relies on *Mott v. State*, 835 S.W.2d 256, 259 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd), another aggravated assault case. In *Mott*, the Fourteenth Court found definitions of knowingly and intentionally identical to those in this case and in *Sneed*, were not error because the charge instructed the jury to consider whether the appellant intentionally or knowingly caused bodily injury to another. Essentially, the court admitted the definitions should not have included the references to conduct, but said that the charge itself focused the jury on the result of the conduct instead of the nature of the conduct. *Id.*

The two cases, *Sneed* and *Mott*, cannot be harmonized. We note the Court of Criminal Appeals refused discretionary review in both *Sneed* and *Mott*.

We find the Dallas court's reasoning in *Sneed* persuasive. In reaching its conclusion, the Dallas Court said,

> The jury may not convict a person of aggravated assault solely on a finding that the accused intentionally or knowingly engaged in conduct which happened to cause bodily injury.... The above quoted language in the charge [the exact language as paragraph number two, above, in this case], that refers to "the nature of his conduct" is appropriate to a charge on an offense that prohibits conduct, such as arson or theft.... That language does not belong in a charge on an offense that does not prohibit conduct.... [L]anguage that defines a culpable mental state with respect to conduct adds nothing since the culpable mental state does not apply to the conduct, and it allows the jury to do that

which the law does not—find the accused guilty of aggravated assault based only on his conduct, rather than on intending or knowing the prohibited results. All references to conduct should have been deleted from the charge.

*Sneed,* 803 S.W.2d at 835–36.

■ We apply the reasoning in *Sneed* and find the definitions in the charge should not have contained references to conduct.

■ As stated earlier, a mistake in the jury charge does not automatically create reversible error. Here, the appellant did not object; thus, before we may reverse we must decide if the error was fundamental. *See, e.g., Sneed,* 803 S.W.2d at 836. The factors we consider in making the decision whether to reverse for charge error are: (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other information contained in the record. *Bailey,* 867 S.W.2d at 43.

■ *The charge itself.* Except for this error, we do not find other errors in the charge.

*The state of the evidence, including contested issues and the weight of the probative evidence.* As discussed under point of error two, we find the evidence sufficient to support the jury's verdict. The evidence in this case was overwhelming.

*The arguments of counsel.* Neither the State nor the defense counsel mentioned the erroneous instruction in his voir dire. *Cf. Sneed,* 803 S.W.2d at 836 (the State used a hypothetical to illustrate misstatement of law). In final argument, the State (but not the defense counsel) mentioned the erroneous instruction two times:

> Now, whether or not it was intentionally and knowingly, that was proven. And, if you recall, or you will see in the jury charge, intentionally and knowingly is when a person acts when they are aware of the *nature of their conduct.*

---

1. The language appeared in the instructions on "knowingly and intentionally," the same place

they occurred here.

Now, all of this information is in the jury charge for you. But if he acts and he's aware of the *nature of his conduct*—and I'm going to talk to you later on about that gentleman's conduct in the bar at the fight—the next thing we have to prove is whether or not he struck the complaining witness with a bottle or his hands.

(Emphasis added.) *Cf. Sneed*, 803 S.W.2d at 837 (the State made numerous statements regarding the misstatement of law during final argument).

*Any other information contained in the record.* No other information in the record supports the conclusion that the error was egregious.

Considering the Bailey factors, we find the error was not so egregious that the appellant was denied a fair trial. *Cf. Sneed*, 803 S.W.2d at 836–37 (the collective effect of the State's errors supported a finding of egregious harm). We overrule the appellant's point of error one as it applied to the erroneous instructions on intentionally and knowingly.

## 2. Serious bodily injury

The appellant contends the trial court committed error in the self-defense instruction by limiting the appellant's claim to those situations in which he feared he was in danger of serious bodily injury. He contends he is reasonably entitled to assert self-defense if he reasonably believed Drew was attempting to use unlawful force against him. The court's instruction on self-defense reads:

Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force. A person is under no obligation to retreat to avoid the necessity of repelling or defending, with force less than deadly force, against an attack or threatened attack. The use of force against another is not justified in response to verbal provocation alone. *When a person is attacked with unlawful force, or he reasonably believes he is under attack or attempted attack with unlawful force, and there is created in the mind of such person a reasonable expectation or fear of some bodily injury, then the law excuses or justifies such person in resorting to force to the degree that he reasonably believes is immediately necessary, viewed from his standpoint at the time, to protect himself from attack or attempted attack.* It is not necessary that there be an actual attack or attempted attack, as a person has a right to defend his person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such force was immediately necessary to protect himself against the other person's use or attempted use of unlawful force. By the term "reasonable belief" as used herein is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant. Now, if you find and believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant did assault John Drew, but you further find from the evidence, or you have a reasonable doubt thereof, that viewed from the standpoint of the defendant at the time, from the words or conduct, or both, of the said John Drew, it reasonably appeared to the defendant that his person was in danger of bodily injury and there was created in his mind a reasonable expectation or fear of bodily injury from the use of unlawful force at the hands of the said John Drew, and that acting under such apprehension and reasonably believing that the use of force on his part was immediately necessary to protect himself against John Drew's use or attempted use of unlawful force, the defendant did strike the said John Drew, to defend himself, then you will acquit the defendant; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict not guilty.

(Emphasis added.)

By adding the words "serious bodily injury," the appellant contends the court

confused the justification of necessity under TEX.PENAL CODE § 9.22 (Vernon 1974) with that of self-defense under TEX.PENAL CODE § 9.31(a) (Vernon 1974). On rehearing, the appellant argues the instruction should not have made any reference to the words bodily injury, because it is not required under the statute. The appellant did not object to any error in the self-defense charge at trial. In such case, reversal is only possible if the error was egregious. *Almanza*, 686 S.W.2d at 171. We do not believe the words "some bodily injury" limited the appellant's self-defense claim because the statute requires the person to believe the other person intends to inflict unlawful force. The Penal Code reads:

> [A] person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

TEX.PENAL CODE § 9.31(a).

The appellant relies on *Kolliner v. State*, 516 S.W.2d 671, 674 (Tex.Crim.App.1974). In *Kolliner*, the court said the appellant was entitled to a self-defense instruction, stating that he need have only a reasonable belief that he is under unjustifiable attack viewed from his standpoint at the time he acted. *Id.*

We hold the appellant in this case received the correct instruction. We overrule the appellant's point of error one as it applied to the instructions on self-defense.

### 3. Affirmative defense

■ The appellant contends the trial court incorrectly instructed the jury concerning his burden of proof. The appellant contends the jury instruction required the jury to believe beyond a reasonable doubt his claim of self-defense. He argues he need only prove self-defense by a preponderance of the evidence because it is an affirmative defense under TEX.PENAL CODE § 2.04 (Vernon 1974). The State argues self-defense is a defense under TEX.PENAL CODE § 2.03 (Vernon 1974) and if the jury has reasonable doubt on an issue, the defendant must be acquitted. The jury instruction setting the burden on self-defense reads:

Now, if you find and believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant did assault John Drew, but you further find from the evidence, or you have a *reasonable doubt thereof*, that viewed from the standpoint of the defendant at the time, from the words or conduct, or both, of the said John Drew, it reasonably appeared to the defendant that his person was in danger of bodily injury and there was created fear of bodily injury from the use of unlawful force at the hands of the said John Drew, and that acting under such apprehension and reasonably believing that the use of force on his part was immediately necessary to protect himself against John Drew's use or attempted use of unlawful force, the defendant did strike the said John Drew, to defend himself, then you will acquit the defendant; or *if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict not guilty.*

(Emphasis added.) The State is correct; self-defense is not an affirmative defense. As the Court of Criminal Appeals said in *Saxton v. State*, 804 S.W.2d 910, 912 n. 5 (Tex.Crim.App.1991): "At the risk of overstating the obvious, we note that self-defense is a defense under the Penal Code, and thus, [TEX.PENAL CODE] § 2.03 is applicable." *See also Luck v. State*, 588 S.W.2d 371, 375 (Tex. Crim.App.1979). TEX.PENAL CODE § 2.03(d) states: "If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted."

The charge properly instructed the jury to acquit if there was a reasonable doubt. We overrule the appellant's point of error one as it applied to the instructions on reasonable doubt.

### 4. Definition of self-defense

■ The appellant argues the trial court did not apply the correct definition of self-

defense to the facts. The appellant contends the charge instructed the jury he could be acquitted only if he defended himself out of a fear of serious bodily injury, not if he defended himself in response to the use of unlawful force.

The charge, as noted earlier, clearly authorized the jury to find self-defense if force was immediately necessary to protect against the other's use or attempted use of unlawful force. We do not find the appellant's argument persuasive.

We overrule the appellant's point of error one as it applied to the definition of self-defense.

## B.

### Sufficiency of the evidence

In point of error two, the appellant contends the trial court erred in entering judgment against him because the evidence was insufficient for a reasonable trier of fact to disregard his claim of self-defense. In point of error three, the appellant contends the trial court erred in entering judgment against him because the evidence was insufficient to sustain a guilty finding. We address these points together.

Under these points, the appellant contends self-defense is an affirmative defense and he has the burden of proving it by a preponderance of the evidence under TEX.PENAL CODE § 2.04(d). Under point of error one, we found that self-defense is not an affirmative defense. We, therefore, view this as a challenge to the sufficiency of the evidence to support a conviction of aggravated assault. A jury verdict of guilty is an implicit finding ·rejecting the defendant's self-defense theory. *Saxton*, 804 S.W.2d at 914. In *Saxton*, the court addressed this issue:

> In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the

prosecution any rational trier of fact would have found the essential elements ... beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.[2]

*Saxton*, 804 S.W.2d at 914.

In reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991); *Glass v. State*, 761 S.W.2d 806, 807 (Tex.App.—Houston [1st Dist.] 1988, no pet.). It is not relevant whether the reviewing court believes the evidence or that it is "outweighed" by the opposing side's evidence, if there is any evidence that could establish guilt beyond a reasonable doubt, the conviction will not be reversed. *Glass*, 761 S.W.2d at 807. An appellate court is not to sit as a thirteenth juror, reweighing the evidence or deciding whether it believes the evidence established the element in contention beyond a reasonable doubt; rather, it is to ask itself whether the trier of fact, acting rationally, could have found the evidence sufficient to establish the element beyond a reasonable doubt. *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex. Crim.App.1988).

Viewing the evidence in the light most favorable to the prosecution, we capsulate the testimony of the witnesses. Denise Stokely, the bartender, testified she did not see who started the fight, but did see the appellant with a beer bottle hitting Drew over the head. She said Drew and the appellant kept fighting until Drew fell down. The bartender said she then went to call authorities and at that point the appellant ran out. Pasadena police officer Rudy Amador testified that upon his arrival, Drew had his head on the bar and was confused and did not

---

2. The appellant contends we should consider all the evidence presented at trial, regardless of whether it is strong, weak, unimpeached, or contradicted because self-defense is an affirmative defense. We do not agree and consider the evidence in light of the verdict as stated under *Saxton*, 804 S.W.2d at 914.

know what he was saying. Mary Sima, owner of the bar, said she knew the appellant because he had been a regular customer at her two bars. Sima testified the appellant came to see her at another bar she owned to tell her about the fight. She said he told her he hurt somebody in the bar. She was asked on direct examination whether he told her he had beaten somebody up. She answered, "Right." Thomas Lewis, a patron in the bar, said he saw the appellant straddle Drew and then hit him two to three times. Drew testified he approached the appellant to diffuse the situation, got no response, and went back to his bar stool. He said he does not remember what occurred next—he only has a memory of waking up in the hospital. The appellant admits he hit Drew more than five times, but he contends Drew initiated the fight. The only testimony as to how the fight started is from the appellant.

The appellant contends the State did not prove its case against him because it failed to prove he acted with the requisite mental culpability necessary to commit aggravated assault. Under the Penal Code a person commits the offense of assault if he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; or

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive.

TEX.PENAL CODE § 22.01(a) (Vernon 1994).

The additional element under aggravated assault requires causing serious bodily injury to another, including the person's spouse. TEX.PENAL CODE § 22.02(a)(1) (Vernon 1994). The evidence in this case is sufficient for a rational trier of fact to have found beyond a reasonable doubt that the appellant committed aggravated assault. We hold this is an implicit finding rejecting the appellant's self-defense theory. *See Saxton*, 804 S.W.2d at 914. We overrule point of error three.

## C.

### Ineffective assistance of counsel

In point of error four, the appellant contends the judgment of the trial court should be reversed because he did not receive effective assistance from his lawyer.

▮▮▮▮ To prevail on a complaint of ineffective assistance of counsel, the appellant must satisfy the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Ingham v. State*, 679 S.W.2d 503, 508–09 (Tex.Crim.App.1984); *Schaired v. State*, 786 S.W.2d 497, 499 (Tex.App.—Houston [1st Dist.] 1990, no pet.). *Strickland's* two-prong test requires the appellant to (1) show that counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed by the sixth amendment; and (2) there is a reasonable probability that but for the deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068. When we review a claim of ineffective assistance of counsel, we must be highly deferential to counsel's performance. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex.Crim.App. 1990). We gauge the adequacy of an attorney's representation by the totality of the attorney's representation, rather than isolated instances in the record of commission or omission. *Id.* We will sustain a claim of ineffective assistance of counsel only if it is firmly founded on the record and affirmatively demonstrates that counsel was ineffective. *Schaired*, 786 S.W.2d at 499.

The appellant identifies the following instances where his trial counsel was ineffective.

### 1. No objection to the jury charge

▮▮▮ The appellant asserts his trial counsel did not object to the jury charge. We found that the charge was erroneous, but because the error was not preserved, the appellant was required to prove the error was egregious. We overruled point of error one because we found the error did not deprive the appellant of a fair trial. Under this point, we are required to determine whether the failure to preserve a point of error, which

might have resulted in a reversal if it had been preserved, supports a claim of ineffective assistance of counsel.

If the appellant's trial counsel had objected to the charge, the error would require reversal if it caused some harm. *Almanza*, 686 S.W.2d at 171. The San Antonio Court of Appeals considered a similar ineffective assistance of counsel claim in *Banks v. State*, 819 S.W.2d 676 (Tex.App.—San Antonio 1991, pet. ref'd). In *Banks*, the court found the defendant's trial counsel was ineffective for not objecting to a jury charge that had the same definitions of knowingly and intentionally involved in this case. *Banks*, 819 S.W.2d at 682. *Banks* involved an injury to a child conviction, also a result-oriented crime. The definitions of knowingly and intentionally, as well as the application paragraph, allowed the jury to convict if that defendant merely engaged in the conduct. *Id.* at 679. The San Antonio court held counsel's failure to object to the jury charge was not within the realm of trial strategy and prejudiced the defendant's defense. *Id.* at 682. The defendant's primary defense was that he did not intend to injure, but the charge and the prosecutor in argument instructed the jury it did not matter if the defendant had no intent to injure. *Id.*

In our case, the definitions of knowingly and intentionally in the jury charge are erroneous. But the application paragraph does focus the jury on the result of the appellant's conduct instead of the nature of his conduct. The prosecutor's final argument also mentioned the erroneous definitions. We find there is not a reasonable probability that but for the error, the result would have been different.

### 2. No proper cross-examination of witnesses

The appellant argues his trial counsel did not adequately cross-examine five State's witnesses.

■ An error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis. *Schaired*, 786 S.W.2d at 499.

■ *Denise Stokeley (Tibbets).* The appellant contends trial counsel should have impeached the bartender about her testimony that he struck Drew on the head with a beer bottle because she was the only one who testified that the appellant used a beer bottle. The defense counsel, through other witnesses, raised doubt as to whether there was a beer bottle used in the assault. Defense witness Thomas Lewis testified the appellant hit Drew two to three times, but said he never saw him with a beer bottle. The appellant testified he hit Drew five to six times, but that he did not have a beer bottle. The appellant also argues Stokeley should have been impeached on her testimony that Drew was hit with the bottle before he fell because she later contradicted herself and said Drew was hit when he was on the ground. But defense witness Lewis testified Drew was hit while he was on the floor. Finally, the appellant argues Stokeley's testimony should have been impeached by medical records that do not show glass present or a blow to the back of the head. We have reviewed the medical records admitted into evidence and found a report by Dr. Larry Pollock that does state Drew was hit on the back of the head with a beer bottle. Also, the testimony of Stokeley did not indicate Drew was hit on the back of the head, only over the head. We hold the information garnered by cross-examination of Stokeley on any of these issues would not have altered the fact that the appellant hit Drew. On rehearing, the appellant contends the testimony regarding the bottle was crucial to his self-defense claim. But, the jury heard the evidence and was instructed as to self-defense. There is no reasonable probability that the result of this trial would have been different had the appellant's trial counsel engaged in more vigorous cross-examination of Stokeley.

■ *Rudy Amador.* The appellant contends trial counsel should have objected to Officer Amador's testimony that the glass on the floor was from a beer bottle because he was not an expert. Officer Amador testified he matched up the glass on the floor to determine the glass was from a beer bottle. The appellant also testified there was glass on the floor from a beer bottle. As the appellant testified to the same thing, we hold

the appellant has not shown how not objecting to the officer's testimony was outside the range of professional competent legal assistance.

■ *Mary Sima.* The appellant argues defense counsel was ineffective because he did not object to the State's leading questions to the bar owner. The testimony complained of is:

> State: What did he [appellant] say to you.
> Sima: He told me he hurt somebody in the bar.
> State: Did he tell you he had beat someone up?
> Sima: Right.
> State: Did he tell you that he had laid someone out?
> Sima: Right.

The appellant contends his trial counsel did not question Sima on whether the appellant told her Drew hit him first or whether the appellant offered to check on Drew's condition. We agree the State was leading the witness here, and vigorous cross-examination could have led to information on which to bolster the appellant's version of the facts. But vigorous cross-examination could also have led to further damaging testimony. Any error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis. *Ex parte Burns,* 601 S.W.2d 370, 372 (Tex.Crim. App.1980); *Schaired,* 786 S.W.2d at 499. We do not find trial counsel's strategy without any plausible basis.

■ *Michael Massey.* The appellant argues that his trial counsel did not object when Officer Massey read to the jury a statement the appellant made to police after the incident. He contends that even though the statement was already in evidence, allowing an officer to read it aloud to the jury reinforced in the minds of the jury the appellant had assaulted Drew. He also contends the trial counsel did not counteract Massey's statements that Green had executed the statement voluntarily. The appellant, however, testified it was a true statement, and he then testified to the same facts as he made in the statement. The appellant does not show there is a reasonable probability the result of the trial would have been different since the appellant testified to the same thing as the officer.

■ *John Drew.* The appellant contends his trial counsel did not object to Drew testifying he was on total disability because of a head injury he suffered as a result of an assault, or that he suffers from a speech impediment, facial tics, and positional vertigo because of it. The appellant argues a medical doctor should have established the proper predicate for Drew's testimony. The appellant also argues Drew was allowed to testify why he was in the bar that night—to help a homeless person—which conveyed the impression he was a "goody-goody" and allowed the introduction of photographs of Drew taken after the assault. The appellant contends his lawyer could have used information garnered from the medical records to show he should not have been drinking while taking his medication for injuries suffered while he was in Vietnam. He also argues trial counsel never asked Drew why he stayed at the bar if he felt apprehensive about the situation with the appellant. While we agree the defense counsel should have objected to Drew's presentation of his own injuries without an expert to explain them, we do not find there is a reasonable probability this would alter the outcome of the trial. Also, allowing in the testimony that Drew was in the bar waiting to help a homeless person or questioning Drew further on why he remained at the bar even though he felt apprehensive would not have caused a different result. The photographs of Drew taken after the assault and introduced into evidence were inflammatory and counsel should have objected to this, but it alone is not reason to reverse on an ineffective assistance of counsel claim.

### 3. No objection to the appellant's statement

The appellant contends trial counsel was ineffective because he did not object to the admission of his statement. The appellant argues his counsel did not request a motion to suppress the statement. He contends the record indicates he felt threatened when he

made the statement.[3] There is nothing in the record that shows counsel knew before the appellant testified at trial that the appellant felt threatened when he made the statement. *See Stewart v. State,* 748 S.W.2d 543, 544 (Tex.App.—Dallas 1988, no pet.) (nothing in record showed the defense counsel knew the prior conviction was void). There is nothing in the record to show the appellant was threatened. We do not find the appellant's argument persuasive.

## 4. No medical expert

■ The appellant contends his trial counsel was ineffective because he did not hire a medical expert. He contends the expert could have shown some of the symptoms Drew experienced following the incident were consistent with pre-existing conditions Drew had.[4] He also argues an expert could testify the symptoms were just as consistent with falling and striking his head on the concrete floor as with being struck over the head with a beer bottle. An expert could have impeached Drew by showing his symptoms were caused by pre-existing conditions. On rehearing, the appellant contends the effect of the expert's testimony here would be to show that the medication may have made Drew more aggressive and the appellant needed to defend himself. But the jury heard several witnesses give their accounts of the assault and were instructed on self-defense. We do not believe there is a reasonable probability that an expert's testimony would have altered the outcome of the trial.

## 5. No challenge to the medical records

■ The appellant argues his trial counsel did not challenge the admissibility of the medical records. He contends the State did not comply with Tex.R.Crim.Evid. 902(10), which requires fourteen-day notice to the opposing party when records are to be introduced. The appellant's trial counsel did not object to the lack of notice and we agree he had grounds to object. We have reviewed the medical records and conclude that there is no reasonable probability that the result would have been different had the records not been admitted.

The appellant also contends that the custodian of records did not testify when the subpoena demanding the records required the presence of the record custodian. The record contains an August 13, 1992, affidavit of the custodian of records for Dr. Larry Pollock, the chief physician, stating the records are kept in the regular course of business by a person familiar with the diagnosis and recorded close to the time of diagnosis.

We do not find counsel to be ineffective here.

## 6. Miscellaneous other grounds

■ The appellant complains of other instances of how his trial counsel was ineffective. He complains his trial counsel allowed the State to badger him and to mangle his nickname from "Butch" to "Butcher" without objection. During the State's cross-examination of defense witness Louise Frierson, a friend of the appellant who was in the bar with him that night, the State asked, "Do you know him as Butch or Butcher?" Frierson replied, "Butch." The appellant does not state how the State badgered him. We agree with the appellant's contention that the mangling of his nickname was inflammatory, and counsel should have objected. But we do not hold this alone was enough to make his performance deficient.

We do not find any of the appellant's claims of ineffective assistance of counsel to be warranted. We overrule point of error four.

DUGGAN, Justice, concurring.

I concur in the disposition of the case. However, contrary to the majority opinion, I subscribe to the reasoning of the Fourteenth Court of Appeals regarding proper definitions in an aggravated assault case, as was

---

3. The appellant contends the officer told him if he did not make a statement he was going to throw him in jail.

4. Drew suffers from post-traumatic stress disorder stemming from a tour of duty in Vietnam. The medical records state he had been depressed for years, and was on powerful and addictive anti-depressants.

dealt with in *Mott v. State*, 835 S.W.2d 256, 259 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd), and I reject the reasoning of the Dallas Court in *Sneed v. State*, 803 S.W.2d 833 (Tex.App.—Dallas 1991, pet. ref'd). I agree with Chief Justice Brown and the unanimous panel in *Mott* in their statement saying:

> We are aware that the definitions in the *Sneed* case are identical to the definitions in the instant case, and the Dallas Court of Appeals held those definitions erroneously focused on the "nature of the conduct." *See id.* We disagree with that determination.
>
> The *Sneed* opinion fails to address the language in the definitions dealing with the "result of the conduct." The definitions allow the jury to convict appellant on a finding that he intentionally or knowingly caused bodily injury to [the named complainant] when it was his conscious objective or desire to cause that result; or where he engaged in conduct when he was aware that his conduct was reasonably certain to cause bodily injury to James. The charge in this case also instructed the jury that appellant committed "an assault if he intentionally or knowingly cause[d] bodily injury to another." The charge properly addresses the result of appellant's conduct. . . .

835 S.W.2d at 259.

With this distinction, I agree with the affirmance of the judgment below.