Opinion issued March 19, 1998



In The

## Court of Appeals
For The
## First District of Texas

---

### NO. 01-96-00520-CR

---

### SHAWN ALI BAHRAMI, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 685791**

---

## OPINION

Shawn Ali Bahrami, the appellant, appeals from his conviction of attempted capital murder. We affirm.

On the evening of January 29, 1995, three young men pushed their way into the house where Yvonne Sledge lived with her children. The men shot Yvonne, her son Brandon, her daughter Candace, and their cousin Darryl Provo. Brandon and Darryl were

transported by Life Flight to the hospital, and Yvonne and Candace were transported by ambulance.

The appellant was indicted for the attempted capital murder of Yvonne and Darryl. He pled not guilty, was convicted by the jury, and was sentenced by the trial court to 40-years confinement.

## Does the Indictment State An Offense?

In point of error one, the appellant claims the indictment did not state an offense against the laws of Texas. The appellant seems to argue that the legislature did not intend for the Texas attempted offense statute[1] to be applied to the section of the capital murder statute that makes the murder of two or more people during the same criminal transaction a capital crime.[2]

---

[1]
> (a)  A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.
> (b)  If a person attempts an offense that may be aggravated, his conduct constitutes an attempt to commit the aggravated offense if an element that aggravates the offense accompanies the attempt.
> &ast;&ast;&ast;
> (d)  An offense under this section is one category lower than the offense attempted....

TEX. PENAL CODE §15.01 (1998).

[2]
> (a)  A person commits an offense if he commits murder as defined under Section 19.02(b)(1) and :
> &ast;&ast;&ast;
> (7)  the person murders more than one person:
> (A) during the same criminal transaction; or

2

The appellant admits there is no case law supporting this argument. The appellant makes a policy argument--the purposes of the multiple-murder capital murder statute are not furthered by allowing the prosecution for *attempted* multiple-murder capital murder. He claims no legislative purpose is served by raising the punishment level one grade by prosecuting a defendant for attempted multiple-murder capital murder, especially when a trial court may cumulate a defendant's sentences in particularly heinous cases.

There is nothing in the capital murder statute to indicate the multiple-murder provision should be treated differently from the other capital murder scenarios. *See Johnson v. State*, 853 S.W.2d 527, 534 (Tex. Crim. App. 1992) (holding law of parties applies to multiple-murder capital murder); *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992) (law of parties applied to capital murder committed during felony robbery). Neither is there anything in the attempted offense statute to indicate it should not be applied to subsection 7 of the capital murder statute. We conclude that the prosecution for attempted capital murder of multiple people does not thwart public policy or legislative intent. *See Johnson*, 853 S.W.2d at 534; *see also Moreno v. State*, 755 S.W.2d 866, 866 (Tex. Crim. App. 1988) (defendant convicted of attempted capital murder of police officer). We conclude that prosecuting a defendant for attempted multiple-murder capital murder serves the same purpose as prosecuting a defendant for

---

(B) during different criminal transactions but the murders are committed pursuant to the same scheme or course or conduct....

3

attempted capital murder under the other sections of section 19.03. *See Norris v. State*, 902 S.W.2d 428, 438 (Tex. Crim. App. 1995) (legislature intended to aggravate punishment for multiple murders, thus allowing imposition of death penalty); *Corwin v. State*, 870 S.W.2d 23, 28 (Tex. Crim. App. 1993) (legislature meant for multiple-murder capital murder statute to include serial murders).

We overrule point of error one.

## Sufficiency of the Evidence

In point of error two, the appellant argues the evidence was legally insufficient to support his conviction. In point of error three, he claims the evidence was factually insufficient.

### A.     The Jury Charge & the Law of Parties

The appellant argues the jury charge gave the jury only two choices, neither of which was supported by the evidence. The appellant admits the evidence shows he shot Darryl and Houston shot Yvonne. Because the evidence does not show that the appellant himself shot both Yvonne and Darryl or that another person shot both victims, the appellant claims the evidence is insufficient to support the verdict. We disagree.

The jury charge included an explanation of the law of parties, which allows a party to an offense to be convicted if the offense is committed (1) by his own conduct, (2) by the conduct of a party for whom he is criminally responsible, or (3) *by both*. TEX. PENAL CODE §7.01(a) (1998). However, the application paragraph of the charge omitted

---

TEX. PENAL CODE §19.03(a) (1998).

4

the third provision that would allow the jury to convict the appellant if it found the offense was committed by both the appellant and another person.

The jury charge read as follows:

All persons are parties to an offense who are guilty of acting together in the commission of the offense. *A person is criminally responsible as a party* to an offense if the offense is committed by *his own conduct, by the conduct of another* for which [sic] he is criminally responsible, *or by both.*

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one party to an offense.

Now, if you find from the evidence beyond a reasonable doubt that ... *the [appellant] did then and there* unlawfully and intentionally with the specific intent to commit the offense of capital murder of Yvonne Sledge and Darryl Provo, *do an act ... or* if you find from the evidence beyond a reasonable doubt *that ... another person or persons did then and there* unlawfully, intentionally with the specific intent to commit the offense of capital murder of Yvonne Sledge and Darryl Provo, *do an act ... and that the [appellant]*, with the intent to promote or assist the commission of the offense, if any, *solicited, encouraged, directed, aided or attempted to aid* another person or persons to commit the offense, if he did, then you will find the [appellant] guilty as charged in the indictment.

(Emphasis added).

When evaluating the sufficiency of the evidence, we measure it against a hypothetically correct jury charge for the offense. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A proper charge in this case would have allowed the jury to convict the appellant if it found any of the following: (1) the appellant shot both victims,

5

(2) another person shot both victims, and the appellant acting as a party to the shootings, or (3) the appellant shot Darryl and acted as a party to the shooting of Yvonne. Upon reviewing the evidence, it appears the jury must have read the third choice into the charge. We will review the evidence as if the charge had included the third option.

**B.     Legal Sufficiency Standard of Review**

The evidence is legally sufficient if, when viewed in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); *Short v. State*, 874 S.W.2d 666, 667 (Tex. Crim. App. 1994); *Green v. State*, 891 S.W.2d 289, 297 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd).

We may not sit as a thirteenth juror and disregard or reweigh the evidence. *Moreno*, 755 S.W.2d at 867; *Reece v. State*, 878 S.W.2d 320, 325 (Tex. App.--Houston [1st Dist.] 1994, no pet.). If there is evidence that establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of evidence grounds. *Moreno*, 755 S.W.2d at 867; *Reece*, 878 S.W.2d at 325. The jury, as the trier of fact, is the sole judge of the credibility of witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Reece*, 878 S.W.2d at 325. The jury may believe or disbelieve all or any part of a witness's testimony. *Sharp*, 707 S.W.2d at 614; *Smith v. State*, 789 S.W.2d 419, 420 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd). A jury may believe a witness even though his testimony is contradicted. *Sharp*, 707 S.W.2d at 614; *Reece*, 878 S.W.2d at 325.

**C.     Factual Sufficiency Standard of Review**

6

When reviewing factual sufficiency, we review all of the evidence, both favorable and unfavorable, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Peoples v. State*, 928 S.W.2d 112, 118 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). We do not view the evidence in the light most favorable to the verdict, as we do when reviewing legal sufficiency challenges. *Clewis*, 922 S.W.2d at 129; *Peoples*, 928 S.W.2d at 118.

**D.    Analysis**

Brandon Sledge testified his sister, Candace, had her 16th birthday party at the Sledge house on the night of January 28, 1995. Brandon saw the appellant at the party with a group of boys, including George Houston and Alton Jackson. When the party broke up, the boys did not want to leave and words were exchanged. The boys finally left when someone fired gunshots into the air. The police came to the Sledge house to investigate the gunfire.

The next night, the Sledge family along with Darryl Provo, a cousin, watched the Superbowl at the Sledge house. Shortly after nine o'clock, after the game was over, Yvonne's parents, John and A.V. Delaspour, dropped in for a visit. Yvonne had just had an operation and her parents had promised to check on her. They went into her bedroom to see her. Brandon, Candace, and Darryl went upstairs to sleep. The next thing Brandon remembered was waking up and seeing the appellant and Jackson, both holding shotguns. The appellant and Jackson ordered the three to come downstairs. They went downstairs and sat on the stairs. Yvonne, Brandon's mother, came out of the

7

back bedroom, and Houston shot her in the hip. Brandon tried to go to her, and Houston shot him in the face. After he was shot in the face, Brandon heard a lot of shooting and felt a second shot in his leg, coming from the direction of the appellant.

Brandon stated in the initial police report that the three men were masked, but at trial he explained that the appellant wore a hooded sweatshirt that was tightly tied under his chin. Brandon testified he could still see the appellant's face.

John Delaspour testified that about 9:30 or 9:45 p.m. that night, a young man rang the doorbell. When Delaspour answered the door, a young man, in a rough tone, asked if Candace was home. Delaspour told the man she was out and closed the door. As he tried to deadbolt the door, it was forced open and three young men carrying shotguns rushed into the house. Houston told Delaspour to get down on his knees, but Delaspour refused. Houston then told Jackson to hold Delaspour, and Jackson shoved his shotgun into Delaspour's ribs, pushing him up against the wall. Houston kept his shotgun trained on Delaspour while Jackson and the appellant ran upstairs. Jackson shouted that Candace, Brandon, and Darryl were upstairs, and Houston yelled to bring them downstairs. Yvonne came out of her room, saw what was happening, shoved her mother back into the bedroom, and told her to call the police. Yvonne came out and asked the men to put the guns down. Houston told her to shut up and shot her in the hip. She fell to the ground and Brandon stood and yelled for her. Houston turned and shot Brandon in the face. The appellant then shot Darryl. Darryl started to crawl up the stairs, and the appellant shot him again. Delaspour thought Brandon and Darryl were both hit the second time by the same shot fired by the appellant. Jackson shot Candace in the thigh.

8

Jackson put his gun against Delaspour's rib cage and, when Houston told him to "blow him away," he pulled the trigger, but the gun did not fire. The three men panicked and ran out the front door.

In the initial police report, Delaspour said the three black men who committed the assault were all masked. At trial, he said the police officer taking the statement must have assumed he meant the appellant was wearing a bandana over his face, but that the appellant wore a hooded sweatshirt and Delaspour could still see his face. Delaspour also said he thought the appellant was Hispanic, not black, and that his statement was wrong.

Candace Sledge testified the appellant, Jackson, and Houston were at her party and argued with one of her uncles. The next night, she said she was awakened by the appellant and Jackson, both carrying shotguns. The appellant and Jackson forced her to go downstairs with Brandon and Darryl, where Houston waited. She said Houston made some reference to a gang to which he belonged. When her mother ran out, Houston shot her. The appellant then shot Darryl in the foot, and Brandon was shot in the face. Jackson shot Candace in the leg and thigh. After she was shot, she remembered hearing more gunshots.

Candace said the appellant wore a sweatshirt tied tight around his face, but that she saw his face. On the night of the attack, she told the police three black men committed the assault, but that one was light-skinned.

Deputy Rodgers of the Harris County Sheriff's Department testified that he arrived at Yvonne's house and saw four people who appeared to have been shot with a

9

shotgun. The two women were shot in the leg area, one of the men was shot in the face and maybe the chest, and the other was shot in the foot and the arm. He said Candace told him three black men had committed the attack. He was told by another deputy that one of the men was lighter-skinned. The four victims and John were shown photographic lineups and all three suspects were identified.

The appellant's aunt, Cheryl Raborn, testified the appellant was at her house watching the Superbowl until 9:35 on the night of the attack. Tony Williams also testified the appellant was at Raborn's house until 9:35 the night of the attack. Two witnesses testified that they saw the appellant at five or 10 minutes past 10:00 p.m. on January 29, 1995, and he acted normal and did not have any blood on him. The appellant testified he was at Raborn's house all day and went straight home at about 10:05 p.m. He denied going to the Sledge house and shooting anyone.

On rebuttal, the State called a schoolmate of the appellant's who testified that on January 30, 1995, she heard the appellant say that he had done a "kick-door" the night before. The witness explained that a "kick-door" is going to someone's house and forcing your way in with your foot.

Reviewing the evidence against a proper charge that would have allowed conviction if the appellant and another person acted together and both committed the offense, we find ample evidence to support the guilty verdict. Viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the conviction. Even when all the evidence is viewed for factual sufficiency without the prism of the light most favorable to the verdict, we do not find that the jury's verdict was contrary to the great

10

weight of the evidence as to be clearly unjust. As the sole trier of fact, the jury was free to disbelieve the appellant's witnesses. We find the evidence factually sufficient to support the conviction.

We overrule points of error two and three.

We affirm the trial court's judgment.

Michol O'Connor
Justice

Before Justices Cohen, O'Connor, and Andell.

Do not publish. TEX. R. APP. P. 47.

11