NO. 07-08-0476-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 27, 2010

_____

PHILLIP DOYLE CHANEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 50TH DISTRICT COURT OF COTTLE COUNTY;

NO. 2834; HONORABLE WILLIAM H. HEATLY, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.

Justice Robert H. Jackson, United States Supreme Court[1]

---

[1] *Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 92 L.Ed. 288 (1952).

Appellant, Phillip Doyle Chaney, was convicted by a jury of murder with an affirmative finding on use of a deadly weapon, to-wit: a firearm. Punishment was assessed at twenty-three years confinement. By his original brief, Appellant presented four points of error alleging error by the trial court (1) during jury selection by making remarks to the panel reasonably calculated to benefit the State or prejudice him by denying him his rights under article 35.15 of the Texas Code of Criminal Procedure; (2) by overruling his objection to testimony by State's witness, Ranger Jay Foster, regarding his intent to kill, thereby affecting his substantial rights; (3) in letting the jury's verdict of murder stand and violating his rights in so doing because the evidence of his intentional or knowing commission of murder is legally insufficient and (4) factually insufficient.

Following submission of this appeal, this Court directed the parties to brief unassigned error regarding the possibility of charge error in the definition of "intentional" as it relates to the result oriented offense of murder.[2] As a result of this Court's directive, Appellant raised two additional points of error, to-wit: (5) the trial court committed fundamental error that egregiously harmed him by erroneously defining the culpable mental states of "intentional" and "knowing" in the abstract portion of the guilt-innocence charge; and (6) the trial court violated his due process rights by allowing inadmissible testimony and argument focusing on the intentional or knowing nature of his conduct as opposed to the result of his conduct.

---

[2]Murder is a "result of conduct" offense, which means that the culpable mental state focuses on the result of the conduct, i.e., causing the death of an individual; as opposed to a "nature of conduct" offense where the focus is on the conduct itself. *Cook v. State,* 884 S.W.2d 485, 491 (Tex.Crim.App. 1994).

As to the first four points, the State contends the trial court did not err in its remarks, Appellant did not preserve an objection as to Ranger Foster's testimony, and the evidence was both legally and factually sufficient. As to the last two points, while the State candidly concedes that the trial court erred by including the full statutory definition of "knowingly" found in section 6.03(b) of the Texas Penal Code in the abstract portion of the charge,[3] it contends that Appellant did not suffer egregious harm because the application paragraph of the court's charge correctly instructed the jury on the appropriate *mens rea*. The State further contends that Appellant's allegations of cumulative errors were unobjected to and thus not preserved for review. Finally, the State contends Appellant's due process rights were not violated.

For the reasons to follow, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

## Factual Background

In February 2005, when Appellant was eighteen years old, he began working as a correctional officer for the Institutional Division of the Texas Department of Criminal Justice at the T.L. Roach Unit in Childress, Texas. Appellant lived in Paducah with his younger brother, Bo, and their mother. Two years later, on the afternoon of March 5, 2007, fifteen year old Lukas Taylor, the victim, and Christopher Dominguez, Jr. skipped baseball practice, bought two marihuana joints, and drove to the Chaney home to spend time with their friend Bo. Another friend, Presciliano Perez, arrived later.

---

[3]Although the abstract portion of the *Charge of the Court* also included the full statutory definition of "intentional" found in § 6.03(a) of the Texas Penal Code, the State does not concede that the trial court erred in that respect.

3

While Appellant was playing a video game, Lukas, who was sitting in a nearby rocker recliner, opened Appellant's gun case, removed a .44 magnum handgun, unloaded it, spun the cylinder, and admired it. Appellant repeatedly asked him to reload the firearm and put it up. Eventually Lukas reloaded the firearm, but before he was able to put it up,[4] Appellant approached him, they struggled, and the firearm discharged, shooting Lukas in the chest.

According to the eyewitnesses, Appellant was not angry and he and Lukas did not argue or fight. Christopher testified that when Appellant was asking Lukas to put the gun up, they were "joking around, mouthing off." During direct examination, Christopher was asked whether Appellant or Lukas were "mad," to which he answered "[n]o."

Appellant's brother, Bo, testified that when the struggle for the gun began, the barrel of the gun was pointed toward a wall then speculated that the gun got turned around during the struggle. None of the eyewitnesses saw whose finger was on the trigger and forensics was unable to establish that fact.

After the shooting, Bo called 911 and began CPR on Lukas, while Appellant went outside. The 911 call was made at 6:34 p.m. Law enforcement and emergency personnel responded. Lukas was transported by ambulance to a hospital in Childress, where he later died.

---

[4]Presciliano testified that the victim put the gun up when asked, but took it out a second time without unloading it.

4

At approximately 7:01 p.m., Texas Department of Public Safety Trooper Keith Bowles contacted Texas Ranger Jay Foster about the incident. Foster instructed Bowles to secure the scene and the witnesses. Foster then contacted the Paducah Chief of Police and advised him to inform Appellant that he was not under arrest. Appellant was taken to the police department where he voluntarily gave a statement.[5] At that time he was unaware that Lukas had died.

After Ranger Foster processed the scene, he went to the police department and met with Appellant. Foster then began a month-long investigation which included attending the autopsy, interviewing witnesses, emergency medical responders, and emergency room personnel. Eventually, he obtained an arrest warrant for Appellant for the offense of manslaughter.

Upon further investigation and interviews with Appellant's supervisor at the Roach Unit and Sergeant Shannon Betts, the firearms instructor for correctional officers, Ranger Foster became convinced that Appellant's conduct constituted murder rather than manslaughter. Based upon Appellant's firearms training and experience, and based upon Ranger Foster's understanding of the law as it pertained to the culpable mental states of knowingly and recklessly, he concluded that Appellant should

---

[5]According to Appellant's statement, he had recently acquired the .44 magnum and Lukas had admired it on several occasions. In his statement, he wrote:

> Lukas Taylor reached between my couch and shelves and got my pistol box which contained a .44 magnum pistol inside a holster. Lukas Taylor then opend [sic] the pistol holster. I then told Lukas Taylor to put the pistol up, but he didn't, so I continued to tell Lukas Taylor to put up the .44 magnum. Lukas Taylor continued to hold the .44 magnum so I got up to get it from Lukas Taylor and then Lukas Taylor pulled the .44 magnum away from me and towards Lukas Taylor. Lukas Taylor had his hand around the grip and finger on the trigger of the .44 magnum when I grabbed the .44 magnum to put it up. Lukas Taylor then twisted the .44 magnum away from me and toward himself. At that time, the .44 magnum fired striking Lukas Taylor in the chest. . . .

5

be held to the higher standard of knowingly because he was not an "ordinary person." Accordingly, he presented the case to the grand jury as a murder, and they returned the instant indictment.

After a lengthy and difficult voir dire, Appellant was tried and convicted of murder. The jury assessed his sentence at twenty-three years confinement and this appeal followed.

Of Appellant's six points of error, we will address two. Because Appellant's third point, legal sufficiency, would provide him the greatest relief, i.e., an acquittal, we will address that contention first.[6] Finding the evidence legally sufficient, we will next address his fifth point, charge error. Because disposition of that point addresses every issue necessary to a final disposition of the appeal,[7] we pretermit Appellant's remaining points of error.

## I. Legal Sufficiency

### A. Standard of Review

It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant committed each element of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2009); Tex. Penal Code Ann. § 2.01 (Vernon 2003). Evidence is legally insufficient if, when viewed in a light most favorable to the

---

[6]Generally, when a party presents multiple grounds for reversal, an appellate court should first address those points that would afford the party the greatest relief. *See* Tex. R. App. P. 43.3; *See also Bradley Elec. v. Cigna Lloyds Ins. Co.,* 995 S.W.2d 657, 677 (Tex. 1999).

[7]Tex. R. App. P. 47.1.

prosecution, a rational trier of fact could not have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex.Crim.App. 2009). In conducting a legal sufficiency review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. In measuring the sufficiency of the evidence to sustain a conviction, we measure the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not necessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* For purposes of legal sufficiency, the quantum of proof necessary to support a conviction is a minimum threshold.

Appellate courts are ill-equipped to weigh the evidence; unlike the factfinder–who can observe facial expressions and hear voice inflections first-hand—an appellate court is limited to the cold record. *Laster*, 275 S.W.3d at 517. Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally. *Id.* After giving proper deference to the factfinder's role, we will uphold the

verdict unless a rational factfinder must have had reasonable doubt as to any essential element.  *Id.* at 518.

### B.    Analysis

To support a conviction for murder, the State was required to prove that Appellant intentionally or knowingly caused the victim's death by shooting him with a deadly weapon, to-wit: a firearm.  *See* Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003) and § 1.07(a)(17)(A) (Vernon Supp. 2009).

Section 6.03 of the Penal Code defines the culpable mental states of "intentionally" and "knowingly" as follows:

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> (b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Murder, whether intentionally or knowingly committed, is a result oriented offense.  *Cook v. State*, 884 S.W.2d 485, 490 (Tex.Crim.App. 1994).  As such, the full statutory definitions of intentional and knowing do not apply.  Instead, the State must establish that the accused intended the result, i.e., death, or that he was aware that his conduct was reasonably certain to cause that result.  *Id.*

8

A firearm is a deadly weapon per se. *See* Tex. Penal Code Ann. § 1.07(a)(17)(A). *See also Ex Parte Huskins*, 176 S.W.3d 818, 820 (Tex.Crim.App. 2005).

According to the evidence presented, Appellant and the victim struggled over a loaded .44 magnum handgun which discharged, shooting the victim in the chest, resulting in his death. Although none of the eyewitnesses could state what caused the handgun to discharge, Ranger Foster opined that Appellant had pulled the trigger during that struggle and that the victim could not have pulled the trigger. Although he unequivocally testified that the shooting was not intentional, in his opinion, Appellant knowingly committed murder. According to Ranger Foster's testimony, no matter how accidental a shooting incident might have been, anyone trained in firearms would not be an "ordinary person" and would, therefore, be incapable of manslaughter or criminally negligent homicide because they would always be aware that careless conduct involving a firearm was reasonably certain to cause death. Although Ranger Foster's testimony was, in part, based upon an incorrect legal premise, his testimony did include statements which were legally sufficient to support the jury's decision to convict Appellant of murder.[8] The legal sufficiency of the evidence was further supported by Christopher's testimony that Appellant "caused" the victim's death and

---

[8]In his dissent, Chief Justice Quinn takes issue with the conclusion that the evidence of guilt was legally sufficient to support a finding of guilt to the offense of murder. Finding Ranger Foster's testimony incorrectly states the law, he logically concludes that a jury does not act reasonably by adopting those misstatements. While we agree that a jury should not base its verdict upon an incorrect understanding of the law, from a legal sufficiency analysis prospective, we must presume that the jury correctly followed that portion of the trial court's instructions that did correctly state the law. *Kirsh v. State,* 306 S.W.3d 738, 748 n.33 (Tex.Crim.App. 2010). As discussed further in Section II, Ranger Foster's objectionable testimony only emphasizes the egregious nature of the misstatement of law found in the Court's Charge in this case.

Presciliano's testimony that Appellant "caused" the shooting. Accordingly, point of error three is overruled.

## II.    The Court's Charge

As stated above, murder, whether intentionally or knowingly committed, is a result oriented offense. *Cook*, 884 S.W.2d at 490. Because the applicable mental state relates to the result of the conduct only, i.e., *causing of the death*, *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex.Crim.App. 2003), a charge which contains the full statutory definition is erroneous. *See Cook*, 884 S.W.2d at 491. *See also Alvarado v. State,* 704 S.W.2d 36, 40 (Tex.Crim.App. 1985). The court's charge for a result oriented offense such as murder should not allow a jury to convict a person based solely on a finding that the accused intentionally or knowingly engaged in conduct which happened to cause death. *See generally Green v. State*, 891 S.W.2d 289, 294 (Tex.App.--Houston [1st Dist.] 1994, pet. ref'd).

Here, the abstract portion of the court's charge contained the full statutory definitions of intentional and knowing as they appear in section 6.03(a) and (b) of the Texas Penal Code. Accordingly, the charge allowed the jury to do that which the law did not -- find him guilty of murder based on his conduct, rather than on intending or knowing the prohibited result -- death. As such, the trial court erred in the submission of its charge to the jury. *Cook,* 884 S.W.2d at 491. However, merely finding error in the court's charge begins, rather than ends, our inquiry. *Almanza v. State,* 686 S.W.2d 157, 174 (Tex.Crim.App. 1984) (op. on reh'g). If error exists, we must then analyze the error for harm. *Ngo v. State,* 175 S.W.3d 738, 743 (Tex.Crim.App. 2005).

10

### A. Standard of Review

Appellant did not object to the trial court's charge error. This failure to preserve jury charge error is not, however, an absolute bar to appellate review. *Warner v. State*, 245 S.W.3d 458, 461 (Tex.Crim.App. 2008). Rather, failure to preserve error establishes the degree of harm necessary for reversal. *Id.* Unobjected to charge error is reversible if it is so egregious and creates such harm that it deprives the accused of a "fair and impartial trial." *Almanza,* 686 S.W.2d at 172. Errors that results in egregious harm are those kinds of errors that affect "'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *See Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App. 1996) (quoting *Almanza*, 686 S.W.2d at 172). *See also Sanchez v. State,* 209 S.W.3d 117, 121 (Tex.Crim.App. 2006).

When reviewing harm resulting from charge error, an appellate court must determine harm in light of (1) the entire jury charge, (2) the state of the evidence, including contested issues and the weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *See Almanza,* 686 S.W.2d at 171. *See also Ngo,* 175 S.W.3d at 750 n.48. Additionally, there is no burden of proof or persuasion in a harm analysis conducted under *Almanza. Warner*, 245 S.W.3d at 464.

11

**B.     Harm Analysis**

**1.     The Entire Jury Charge**

While the abstract definitions of intentional and knowing contained in the court's charge erroneously included references to the nature of Appellant's conduct, the application paragraph of the court's charge correctly limited the jury's consideration to the result of his conduct.  Accordingly, the State relies heavily on *Medina v. State*, 7 S.W.3d 633, 640 (Tex.Crim.App. 1999), and *Richie v. State*, 149 S.W.3d 856, 857 (Tex.App.--Amarillo 2004, no pet.), for the proposition that harm can never be egregious when it is shown that an appellant fails to make an objection at trial and the charge correctly instructs the jury in the application paragraph.

Despite its earlier holding in *Medina*, in 2006 the Court of Criminal Appeals, in granting an appellant's petition for discretionary review in a per curiam, unpublished opinion, held that an appellate court improperly limits its harm analysis when it does so without addressing the other *Almanza* factors.  *See Dougherty v. State*, No. PD-1311-05, 2006 WL 475802 (Tex.Crim.App. March 1, 2006) (per curiam) (not designated for publication).  In *Dougherty,* the appellate court's decision that error in the abstract portion of a jury charge did not cause egregious harm when the application paragraph properly instructed the jury was vacated and remanded for consideration of the remaining *Almanza* factors.  Although the appellate court had correctly set forth the standard for assessing harm, the high Court determined that a harm analysis based on charge error could not be based solely on the jury charge but must instead include consideration of all four *Almanza* factors.  *Id.  But see Dougherty v. State*, 188 S.W.3d

670 (Tex.Crim.App. 2006) (Keller, P.J. dissenting) (concluding that appellant's petition should have been refused because an erroneous abstract paragraph is completely remedied by a properly limited application paragraph without the necessity of considering all four *Almanza* factors).

In *Richie*, 149 S.W.3d at 857, this Court followed *Medina* and, without analyzing all four factors, found that Richie had not suffered egregious harm where the application paragraph properly instructed the jury on the correct culpable mental state*. Richie*, however, predates *Dougherty*, and in light thereof, we deem it appropriate to consider all of the *Almanza* factors in determining harm.[9]

In that vein, we note that the *Charge of the Court* was a multifarious charge including the lesser included offenses of manslaughter[10] and criminally negligent homicide.[11] Again, the abstract definition of the appropriate culpable mental states included the full statutory definitions of reckless and criminal negligence. While the distinction between "nature of conduct" and "result of conduct" becomes blurred with respect to offenses based upon a reckless or criminally negligent *mens rea,* the inclusion of the full statutory definition of all four mental states, combined with the State's argument that Appellant was not an "ordinary man," certainly compounded the error.

---

[9] Furthermore, we note that, in light of *Dougherty,* the State analyzed all four *Almanza* factors in its *Supplemental Brief.*

[10] *See* Tex. Penal Code Ann. § 19.04 (Vernon 2003).

[11] *See* Tex. Penal Code Ann. § 19.05 (Vernon 2003).

Furthermore, even though the State's witnesses had testified that Appellant did not intentionally cause the victim's death, and the State acknowledged in its closing arguments that it was only relying upon knowing for a murder conviction, the charge of the court still allowed jurors to consider whether or not Appellant committed murder by intentionally engaging in conduct. Therefore, overall, a review of the entire jury charge militates in favor of a finding of harm.

### 2. The State of the Evidence

From the beginning, as it pertained to Appellant's culpable mental state, the State's evidence focused on the nature of his conduct. According to the State, because of his extensive firearms training, Appellant could not have been guilty of the lesser offenses of manslaughter or criminally negligent homicide because those offenses required a culpable mental state which, according to the State's theory, only applied to an "ordinary person."[12] In reaching this conclusion, the State relies heavily on the testimony of Ranger Foster.[13]

Of that evidence which Appellant contested, and upon which the jury would be asked to make determinations of probative value, the vast majority dealt with Appellant's culpable mental state. The State spent a great deal of time establishing that, due to his firearms training, Appellant was not an ordinary person, and that he

---

[12]The culpable mental states of recklessness and criminal negligence provide that the actor's risk "constitutes a gross deviation from the standard of care that an *ordinary person* would exercise . . . as viewed from the actor's standpoint." (Emphasis added).

[13]Although the admissibility of portions of Ranger Foster's testimony was raised by Appellant in his second point of error, for purposes of egregious harm review, we need not address that contention.

must have fully understood that wrestling over a loaded firearm was an extremely dangerous proposition.

Sergeant Shannon Betts, who trained Appellant on use of firearms, testified that Appellant had more firearms training than the ordinary citizen. In response to numerous questions during direct examination, Ranger Foster emphatically testified that Appellant was not an ordinary person because of his extensive firearms training. He further opined that the culpable mental states of recklessness and criminal negligence simply did not apply to Appellant for that reason.

During Ranger Foster's direct testimony, the prosecutor recited the full statutory definition of "knowingly" and asked the following question:

[Prosecutor]: So tell us your feelings about how those facts apply.

[Ranger Foster]: Based on --

[Defense Counsel]: Objection, Your Honor, invades the province of the jury.  They're the ones that -- they are the ones that determine whether it was intentional, knowing, reckless, or criminally negligent.

[Prosecutor]: Judge, if I may respond.

[Court]: Yes.

[Prosecutor]: The Ranger is testifying about why he charged this defendant with manslaughter and later changed his mind as to what the offense was.  He's entitled to say why he changed his mind and what the offense is and why he charged him in that regard.

[Court]: Your objection is overruled.  Go ahead, Ranger.

Later in his testimony, again over objection,[14] Ranger Foster explained why he increased the charge from manslaughter to murder:

> [t]he part, as we said, that went from manslaughter to murder was his background, his training as a correctional officer. He is held to a higher degree of accountability, just such as myself would be in a similar situation, and he is not an ordinary person.

During cross-examination, Ranger Foster clung to his opinion that a person who is trained to carry a weapon for employment purposes is not an ordinary person for purposes of culpable mental states. He qualified his testimony to prevent "blanket coverage" by testifying that whether a person should be held to a higher standard "depend[s] on the amount of training and the situation around it."

Appellant's brother, Bo, testified that Appellant was not "mad" and there was no arguing or fighting between Appellant and Lukas. Although Christopher answered affirmatively during direct examination when asked if Appellant "caused" the victim's death, he also testified that Appellant was not mad and that Appellant and Lukas were "joking around." Presciliano testified during cross-examination that Appellant did not knowingly shoot Lukas and agreed with defense counsel that the discharge of the firearm was an unintentional act.

Lukas Taylor was shot during a struggle for control of the firearm and other than Ranger Foster's opinion testimony that Appellant committed murder, the State did not present evidence that it was Appellant's purpose that Lukas would die as a result of

---

[14]Defense counsel objected, "asked and answered for the third time, Your Honor." The objection was overruled.

16

their confrontation. Accordingly, we conclude the evidence tending to support a finding that Appellant caused the victim's death, a required element of the offense, is "weak" and, considering conflicting evidence, is arguably "against the great weight and preponderance of the evidence." *Laster*, 275 S.W.3d at 518.[15] Consequently, we find the second *Almanza* factor also favors a finding of harm.

### 3. The Arguments of Counsel

In his opening argument, the prosecutor stated:

[Appellant] loved guns. He owned numerous firearms, including shotguns, pistols, and assault rifles. He had worked for about two years as a prison guard over at the Roach Unit in Childress. As a requirement for his employment, he was trained in firearm proficiency. As a requirement of his employment, he learned how to use firearms with an emphasis on safety. He was certified by the State of Texas as a corrections officer. So [Appellant] knew how to safely handle guns.

But in spite of his training, [Appellant] almost always kept his guns loaded and had a habit of pointing them at people. . . .

\* \* \*

[Appellant's] *conduct caused the death* of Lukas Taylor.

\* \* \*

[B]ut for *the act and the conduct* of [Appellant], the shooting would not have occurred.

\* \* \*

The prosecutor then read the full statutory definitions of "intentionally" and "knowingly" to the jury and continued:

---

[15]A conviction is not subject to reversal on the basis of factually insufficient evidence unless: (1) the evidence supporting the conviction is "too weak" to support the factfinder's verdict, or (2) considering conflicting evidence, the factfinder's verdict is "against the great weight and preponderance of the evidence." Although factual sufficiency was raised by Appellant in his fourth point of error, we need not fully address that issue for purposes of egregious harm review.

> [C]onduct is the core part of those definitions. . . .  It's the act and the conduct of [Appellant], [Appellant] *alone*, and that will prove the offense of murder.

(Emphasis added).  The prosecutor's opening argument contains misstatements of law. Murder is not proven by knowing *conduct;* rather, section 19.02(b)(1) of the Texas Penal Code criminalizes *causing death*.

During his closing argument, the prosecutor explained to the jury it was relying solely on the culpable mental state of "knowingly" to establish murder.  Although he did reiterate the incorrect full statutory definition of knowingly, his factual application only emphasized the correct definition.  However, after explaining knowingly, he continued his argument by incorrectly contending that the culpable mental states of reckless and criminal negligence applied only to an ordinary person.  Then, by arguing that Appellant was not an ordinary person, he reasoned that the offenses of manslaughter and criminally negligent homicide did not apply to Appellant.  This argument was not only misleading, it was a misstatement of the law.

After the defense presented its closing argument, the prosecutor gave its final argument.  In summarizing responses to his questions by Bo, Christopher, and Presciliano, he argued, "the acts and conduct of [Appellant] . . . but for the acts and the conduct of this man, [Appellant], Lukas Taylor would still be alive and there would never have been a shooting."  He then reminded the jury of Sergeant Betts's testimony that Appellant is not an ordinary person because of his firearms training.  Finally, in recalling Ranger Foster's testimony, the prosecutor reiterated Foster's opinion that Appellant was guilty of murder because he was not an ordinary person.

The prosecutor continued during his closing argument:

> [Prosecutor]: And I think he [Ranger Foster] did a good job and I don't want to belabor the jury, because we've already talked about it, explaining to you why his investigation revealed the crime of murder, in his opinion, and not a manslaughter or criminal negligence. *And it all goes back -- a lot of it goes back to the fact that* [Appellant] *is just not an ordinary person.* He is a person that is trained in firearms safety and firearms and knows a lot more than an ordinary person. *He doesn't fit the definition for manslaughter or criminal negligence.*

(Emphasis added).

In analyzing the third *Almanza* factor, the State asserts its arguments were proper and that Appellant did not object to the definition of "knowingly" during closing arguments. We disagree. Just as with the prosecutor's opening argument, his closing and final arguments also contain misleading contentions and misstatements of law. He emphasized that but for Appellant's *conduct*, the victim would still be alive and he argued that the offenses of manslaughter and criminally negligent homicide were simply inapplicable to Appellant because he was not an ordinary man.

Concluding that certain misstatements of law were made by the prosecutor during opening and closing arguments which likely would have mislead and confused the jury, we disagree with the State's assessment of the third *Almanza* factor and conclude that the improper arguments egregiously prejudiced Appellant.

### 4.    Any Other Relevant Information

Finally, in assessing the fourth and final *Almanza* factor, any other relevant information, the State insists the jury needed to understand the emphasis the State placed on Appellant's conduct. The State asserts, "the jury needed to understand the

circumstances of the shooting and the training of the appellant in order to understand that the appellant knew that Lukas Taylor would die as a result of the appellant's actions."

In response to the prosecutor's closing arguments, defense counsel argued that the State's theory was that persons with firearms training are so extraordinary that any unintentional discharge of a firearm causing death would constitute murder. Taken to its logical conclusion, under the State's theory, an off-duty police officer, due to his firearms training, would always be held to a higher standard than the "ordinary person" and could not be found guilty of any offense less than murder, even if his conduct was merely reckless or criminally negligent.

A statute is interpreted in accordance with the plain meaning of its text, unless the plain meaning leads to an absurd result that the Legislature could not possibly have intended. *See Murray v. State*, 302 S.W.3d 874, 877 (Tex.Crim.App. 2009). The prosecution's theory leads to an absurd result. Neither the Texas Penal Code nor the Texas Code of Criminal Procedure defines "ordinary person." Furthermore, we have not found any authority which imposes a higher standard of culpability for homicides committed by persons with firearms training. We decline to adopt such a standard for assessing culpability in homicide cases. To do so would amount to legislating from the bench. *See Turner v. Cross*, 83 S.W. 218, 188 S.W. 578, 579 (1892).[16] Therefore, our analysis of the fourth *Almanza* likewise weighs in favor of a finding of harm.

---

[16]It is the duty of a court to administer the law as it is written, and not to make the law; and however harsh a statute may seem to be, or whatever may seem to be its omissions, courts cannot on such considerations by construction retrain its operation or make it apply to cases to which it does not apply, without assuming functions that pertain solely to the legislative department of the government.

20

In sum, the erroneous abstract portion of the charge, the evidence presented by the State, the prosecutor's opening and closing arguments, and the State's general theory of the inapplicability of the culpable mental states of reckless and criminal negligence to persons with firearms training, all emphasized the nature of Appellant's conduct, thereby allowing the jury to believe they were authorized to convict Appellant of murder based solely on their belief that he knowingly or intentionally engaged in extremely dangerous conduct (wrestling a loaded firearm away from Lukas Taylor), without requiring a finding that he intended or knew that death would result. This error was only exacerbated by the misstatement of the law as it pertained to the applicability of reckless and criminal negligence as culpable mental states exclusively reserved to the acts of an "ordinary man." These errors not only deprived Appellant of a valuable right, the right to be tried in accordance with the law, they also vitally affected his defensive theory, to-wit: that Lukas Taylor's death was the result of reckless or criminally negligent conduct or was the result of a terrible and tragic accident. Based upon the entire record of this case, we conclude that the trial court's charge error caused Appellant egregious harm. Point of error five is sustained.

## C. Conclusion

Consequently, the trial court's judgment is reversed and the cause is remanded to the trial court for further proceedings.

Patrick A. Pirtle
Justice

Quinn, C.J., dissenting.

Publish.

21