

In The

# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-11-00136-CR
_____

LOSARO SANDOVAL, JR. AKA LASARO SANDOVAL, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181ST District Court
Potter County, Texas
Trial Court Cause No. 49,915-B, Hon. John B. Board, Judge Presiding

June 27, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Losaro Sandoval, Jr. a/k/a Lasaro Sandoval, Jr., was convicted by a jury of aggravated assault on a public servant with a deadly weapon, enhanced, and sentenced to fifty years confinement. Sentence was imposed on November 17, 2005. By opinion dated May 16, 2006, in cause number 07-06-0187-CR, this Court dismissed Appellant's attempt to appeal his conviction because no notice of appeal was ever filed. The Texas Court of Criminal Appeals granted him an out-of-time appeal. By two issues,

he contends (1) the jury charge's failure to define "serious bodily injury" caused him fundamental egregious harm and (2) the order to pay court-appointed attorney's fees is not supported by legally sufficient evidence.  We modify and affirm.

## BACKGROUND FACTS

During the afternoon hours of August 4, 2004, a female called 911 to report that her boyfriend had locked himself in a park restroom and threatened to cut his wrists.  He had just consumed a large amount of prescription antidepressants after arguing with his girlfriend.  The first officers to arrive were Officer Brett Thomas and Bob Snyder.  They were informed that Appellant had a pocket knife.  Three other officers arrived on the scene.  According to Officer Thomas's testimony, he tried to communicate with Appellant to assess his condition and get him help.[1]  He obtained a key to the restroom from a park attendant but his attempt to unlock the door was thwarted by Appellant.  Officer Snyder walked to the back of the building where he was able to look through a small opening and observe that Appellant was holding the door shut.

In an attempt to back Appellant away from the door, Officer Snyder stood on top of a garbage can and deployed his Taser through the small opening.  He struck Appellant in the back but the Taser probes did not make full contact with Appellant's skin and he did not go down.[2]  He was, however, pushed to the back wall and away

---

[1]Officer Thomas and other officers testified that when dispatched to a suicide call, their objective is to check on the person's welfare and safety, especially in this case where they had been advised that Appellant had already overdosed on prescription medication.

[2]According to testimony, when a taser's trigger is deployed, two probes discharge from a cartridge.  If both probes strike the subject's skin, his neuromuscular system is momentarily locked down.  The desired effect is successful only if both probes make contact.  If full contact is not made, there may still be an electrical shock, but the neuromuscular system does not shut down.

from the door allowing officers to open it.  Officer Thomas testified that Appellant lunged toward him holding a large folding pocket knife in his left hand,[3] raised above his head "in a stabbing type motion."  Officer Thomas announced that Appellant had a knife and he and the other officers shoved the door open and pinned Appellant behind it.  Appellant was still holding the knife, although it was now down by his leg.  Officer Thomas reached around the door and deployed his Taser.  Appellant hit the ground and released the knife.

Paramedics were allowed in once the scene was secured and Appellant was placed on a gurney and handcuffed.  He was taken to the hospital and after a few days was released to his girlfriend.  At a later date, he and his girlfriend went to the police station to report that his vehicle had been stolen and it was then that Appellant was advised there was an outstanding arrest warrant for him for aggravated assault.  He was arrested and charged with threatening Officer Thomas, a public servant, with imminent bodily injury while using or exhibiting a knife as a deadly weapon.

The other officers who responded to the scene all testified at Appellant's trial.[4] For the most part, their testimony echoed Officer Thomas's testimony.

ISSUE ONE—JURY CHARGE ERROR

By his first issue, Appellant maintains he suffered egregious harm by the trial court's failure to define "serious bodily injury" in the jury charge.  While we agree the

---

[3]During his testimony, Appellant described the knife as a buck knife that he carried in a case on his side, not in his pocket.

[4]Two of the officers were no longer with the police department at the time of trial.

omission of the statutory definition was error, we disagree that it caused egregious harm.

The trial court is responsible for delivering to the jury "a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.14 (WEST 2007). A charge does not fully set forth that law without including the definitions of those words and phrases that have been legislatively provided. *See Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex.Crim.App. 1986). Thus, the trial court was required to submit the statutory definition of "serious bodily injury" to the jury. *See Parsons v. State*, 191 S.W.3d 862, 864 (Tex.App.—Waco 2006, pet. ref'd). The trial court's failure to do so was error.[5]

Having found error in the charge, we must now analyze that error for harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). Jury charge error is harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex.Crim.App. 2006). The degree of harm necessary for reversal, however, depends on whether the defendant preserved the error by objection.

Charge error requires reversal when a proper objection has been made and a reviewing court finds "some harm," i.e., error that is calculated to injure the rights of the defendant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985). When, as

---

[5]The State relies on *Mitchell v. State*, 632 S.W.2d 157, 159 (Tex.App.—Waco 1982, no pet.), for the proposition that the trial court need not define the term "serious bodily injury" when there is no question as to the nature of the injuries. The State incorrectly cites *Mitchell* as a Court of Criminal Appeals case. Notwithstanding the oversight, *Mitchell* relied on *Bowman v. State* 504 S.W.2d 880, 881 (Tex.Crim.App. 1974), which was superseded in *Andrews v. State*, 652 S.W.2d 370, 375 (Tex.Crim.App. 1983), after the Penal Code was amended to include the definition of "serious bodily injury."

4

here, the error was not preserved by objection, reversal is not warranted unless the record shows "egregious harm." *Id.* In determining whether jury charge error is egregious, we consider the entirety of the charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel and any other relevant information revealed by the record as a whole. *See Almanza*, 686 S.W.2d at 171. *See also Chaney v. State*, 314 S.W.3d 561, 568 (Tex.App.—Amarillo 2010, pet. ref'd).

A pocket knife, such as the one used by Appellant, is not a deadly weapon per se. *Limuel v. State*, 568 S.W.2d 309, 311 (Tex.Crim.App. 1978). Thus, the State was required to show that in the manner of its use or intended use, it was capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (WEST SUPP. 2012). A pocket knife can qualify as a deadly weapon if it is displayed in a manner conveying an express or implied threat that death or serious bodily injury will be inflicted if the desire of the person displaying the knife is not satisfied. *Lewis v. State*, 628 S.W.2d 276, 278 (Tex.App.—Amarillo 1982, no pet.).

Appellant asserts that failure to define "serious bodily injury" in the charge caused him egregious harm because there is no assurance the jury found that element without the statutory definition being provided to them. He adds that "the charge implicitly instructed the jury that 'serious bodily injury' is merely an acute form of 'bodily injury,'" which it is not.[6]

---

[6]"Bodily injury" means physical pain, illness, or any impairment of physical condition. TEX. PENAL CODE ANN. § 1.07(a)(8) (WEST SUPP. 2012). "Serious bodily injury" is bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id.* at (a)(46).

5

Without seeming to minimize Appellant's argument, we note that the jury was instructed on the definition of a deadly weapon as "anything that in the manner of its use or intended use is capable of causing death *or* serious bodily injury." [Emphasis added]. Officer Thomas was not injured during the incident. The evidence showed that all officers were in uniform at the time of the incident and were discharging their lawful duties. Officer Thomas testified that given the definition of "deadly weapon," the knife used by Appellant was "absolutely" a deadly weapon. The knife was introduced into evidence for the jury to evaluate. Notwithstanding testimony from Appellant and his girlfriend that the knife was dull, the jury found it to be a deadly weapon. Because the statutory definition of deadly weapon contained in the charge allowed the jury to evaluate a deadly weapon disjunctively as either capable of causing (1) death *or* (2) serious bodily injury, it is inconsequential that the jury was not provided with the definition of the latter.

Appellant testified that he did not intend to hurt anyone but himself. However, placement of the word "capable" in the statute enables it to cover conduct that threatens deadly force *or* serious bodily injury even if the actor had no intention of actually using deadly force or causing serious bodily injury. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000). Because the charge instructed the jury on the definition of a deadly weapon and the evidence showed that Appellant's knife was capable of causing death, the omission of the definition of "serious bodily injury" in the charge was harmless. We conclude based on the charge, the evidence, the arguments of counsel and other relevant information that Appellant did not suffer egregious harm. Issue one is overruled.

**ISSUE TWO—COURT-APPOINTED ATTORNEY'S FEES**

By his second issue, Appellant challenges the sufficiency of the evidence ordering him to pay $3,100 for court-appointed attorney's fees as reflected in the *Bill of Costs* contained in the Clerk's Record and incorporated into Appellant's *Judgment*. Based on *Mayer v. State*, 309 S.W.3d 552 (Tex.Crim.App. 2010), the State agrees that no evidence was presented showing that Appellant had the ability to offset in whole or in part the cost of legal representation. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (WEST SUPP. 2012). Consequently, we sustain issue two.

Because the *Bill of Costs* is incorporated into the judgment, we modify the trial court's judgment by deleting any requirement that Appellant reimburse the State the sum of $3,100 for court-appointed attorney's fees and by adding the following provision: "As used herein the term 'court costs' does not include court appointed attorney's fees." *See Mayer,* 309 S.W.3d at 555-56.

**CONCLUSION**

As modified, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.