

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-16-00158-CR

LAWRENCE E. WHITE                                           APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1434087D

----------

## MEMORANDUM OPINION[1]

----------

A jury found Appellant Lawrence E. White guilty of possessing marijuana in the amount of five pounds or less but more than four ounces, found the enhancement paragraph true, and assessed his punishment at 20 years' confinement in the penitentiary. Tex. Health & Safety Code Ann. § 481.121(b)(3) (West 2010); Tex. Penal Code Ann. § 12.425(c) (West Supp. 2016). The trial

---

[1]*See* Tex. R. App. P. 47.4.

court sentenced White accordingly. In four points, White contends that (1) the trial court erred by failing to disclose the confidential informer's identity; (2) the jury charge contained egregious error; (3) the trial court erred by denying his directed-verdict motion because the evidence was insufficient; and (4) his punishment violated the Eighth Amendment of the United States Constitution because it was cruel and unusual. We affirm.

## SUFFICIENCY OF THE EVIDENCE

White's third point is that the trial court should have granted his motion for a not-guilty directed verdict because, according to White, the evidence was insufficient to support his conviction for possessing marijuana in an amount of five pounds or less but more than four ounces. When, as here, a party presents multiple grounds for reversal, we generally first address those points that would afford the party the greatest relief. *Chaney v. State*, 314 S.W.3d 561, 565 n.6 (Tex. App.—Amarillo 2010, pet. ref'd). Because White's sufficiency challenge would provide him an acquittal if successful, we address it first. *Id.* at 565.

### Standard of Review

We apply the same standard of review to a directed-verdict motion as that used under a sufficiency review. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 844 (1997); *Havard v. State*, 800 S.W.2d 195, 199 (Tex. Crim. App. 1989); *Pollock v. State*, 405 S.W.3d 396, 401 (Tex. App.—Fort Worth 2013, no pet.). In our due-process review of evidentiary sufficiency to

2

support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Pollock*, 405 S.W.3d at 401. This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011); *Pollock*, 405 S.W.3d at 401.

The factfinder is the sole judge of the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903; *Pollock*, 405 S.W.3d at 401. Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate and substitute our judgment for the factfinder's. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Pollock*, 405 S.W.3d at 401. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *Pollock*, 405 S.W.3d at 401. We must presume that the factfinder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Wise*, 364 S.W.3d at 903; *Pollock*, 405 S.W.3d at 401.

3

A person commits the state-jail-felony offense of marijuana possession if he knowingly or intentionally possesses a useable quantity of the drug in an amount between four-plus ounces and five pounds.[2]  *See* Tex. Health & Safety Code Ann. § 481.121(b)(3); *Hung Phuoc Le v. State*, 479 S.W.3d 462, 467 (Tex. App.—Houston [14th Dist.] 2015, no pet.).  To prove unlawful possession, the State must establish that the accused exercised care, control, or management over the contraband and knew that the substance was in fact contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled on other grounds by Robinson v.State*, 466 S.W.3d 166, 173 n.32 (Tex. Crim. App. 2015); *Hung Phuoc Le*, 479 S.W.3d at 467.

The State may prove these elements through direct or circumstantial evidence, but the evidence must establish that the accused's connection with the substance was more than merely fortuitous.  *See Blackman*, 350 S.W.3d at 594–95; *Hung Phuoc Le*, 479 S.W.3d at 467.  In other words, mere presence in the same place as the controlled substance will not support a possession finding. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).  But presence or proximity, when combined with other evidence, either direct or circumstantial, may establish possession.  *See id.*

---

[2]White's enhancement paragraph (two prior felony convictions for robbery by threats) raised the punishment range of the offense to a second-degree felony.  *See* Tex. Penal Code Ann. § 12.425(c).  Second-degree felonies are punishable by imprisonment for not more than 20 years or less than two years and a fine not to exceed $10,000.  Tex. Penal Code Ann. § 12.33 (West 2011).

Possession also need not be exclusive. *See Hung Phuoc Le*, 479 S.W.3d at 467; *Henry v. State*, 409 S.W.3d 37, 42 (Tex. App.—Houston [1st Dist] 2013, no pet.). When a defendant is not in exclusive possession of the place where the substance is found, additional independent facts and circumstances must exist linking him to the contraband. *See Poindexter*, 153 S.W.3d at 406. Texas courts have recognized a non-exclusive list of circumstances tending to establish affirmative links that will support an inference of possession, including:

- the defendant's presence when a search was conducted;

- whether the contraband was in plain view;

- the defendant's proximity to and the accessibility of the contraband;

- whether the defendant was under the influence of narcotics when arrested;

- whether the defendant possessed other contraband when arrested;

- whether the defendant made incriminating statements when arrested;

- whether the defendant attempted to flee;

- whether the defendant made furtive gestures;

- whether an odor of contraband existed;

- whether other contraband or drug paraphernalia was present;

- whether the defendant owned or had the right to possess the place where the drugs were found;

- whether the place where the drugs were found was enclosed;

- whether the defendant was found with large amounts of cash;

5

- whether the defendant's conduct indicated a consciousness of guilt.

*See Evans*, 202 S.W.3d at 162 n.12; *Hung Phuoc Le*, 479 S.W.3d at 467.

It is the logical force of all direct and circumstantial evidence and not the number of links that is dispositive. *See Evans*, 202 S.W.3d at 162 n.12; *Hung Phuoc Le*, 479 S.W.3d at 467. A corollary principle is that the absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links that do exist. *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *see also Williams v. State*, 313 S.W.3d 393, 398 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

**The Evidence**

Maegan Parker, who managed the Cedar Ridge Townhomes on Knoll Crest Drive in Arlington, often visited the unit at 2130 Knoll Crest Drive not only because of her job duties but also because her mother-in-law lived next door. Parker deduced that White lived at 2130 Knoll Crest Drive with the actual lessee, Laprecious Wheeler: she had seen him there frequently, and other tenants had complained about him over a period of time. Other people living at 2130 Knoll Crest Drive included Wheeler's mother (Ewanda Smith), Wheeler's children, Wheeler's uncle, and Wheeler's younger brother (T.P.).[3]

Over the Labor Day weekend in 2015, Parker saw White leave the townhome, walk out to a vehicle in the parking lot, briefly talk to the vehicle's

---

[3]To protect this juvenile's privacy, we use his initials. *See* Tex. R. App. 9.8.

6

occupants, and go back into the residence. White repeated this pattern at least six times in a single hour. (Detective Andrew Van Treeck of the Arlington Police Department offered context for this kind of behavior, testifying that frequent, brief, and repeated traffic at a specific location often indicated drug trafficking.) Shortly afterward, on September 10, Parker made a complaint about White.[4]

Arlington P.D. Detective Spencer Simmons testified that after investigating a complaint about illegal narcotics activity at 2130 Knoll Crest Drive, he secured a search warrant for that address on September 24, 2015; the targets were White and T.P.

Working undercover, Detective Van Treeck conducted surveillance on 2130 Knoll Crest Drive the next day, September 25, while other officers prepared to execute the search warrant. Detective Van Treeck parked his vehicle on an empty lot from which he could watch the door to the residence's patio area and could see White sitting in a lawn chair about 12 feet in front of the townhouse. From that vantage point, White had a good view of Arbrook Street's traffic.

Over the next several minutes, White walked from the lawn chair into the townhouse and back again. On his last trip, he came out carrying a small child. With the child in his arms, White walked westbound on the north side of Arbrook Street, crossed the street, then started walking southbound. As White stood on the south side of Arbrook Steet, he made a telephone call while holding the child.

---

[4]From the context, the record suggests that Parker lodged a formal complaint with the Arlington Police Department on that date.

Although White was some distance away from Detective Van Treeck, White intermittently stared at him. Because White continued to look in Detective Van Treeck's direction as White walked back to his residence, Detective Van Treeck grew concerned that his presence might have compromised the operation.

On returning to the townhome, White took the child inside and came back out alone. Shortly after that, Detective Van Treeck saw a man walk up the drive and approach White. They spoke briefly, and the man left.

The man who approached White was Adam Colbert, a Tarrant County juvenile-probation officer. Colbert was there looking for T.P., one of his probationers, whom Colbert had been supervising for the past three months. Although Colbert had last visited T.P. at the Knoll Crest address on August 31, T.P. was not there for Colbert's multiple attempted follow-up visits. (Colbert was unable to find T.P. at 2130 Knoll Crest Drive because after property manager Parker had received a complaint on September 5, she had asked T.P. to leave the property and had not seen him since then.)

Colbert recognized White—who said T.P. was not home—as Wheeler's boyfriend. Colbert asked White to "let [T.P.] know that [he] came by" and to get in touch with Colbert as soon as possible.

After Colbert left, White began to walk around the townhome's patio area and returned to his chair. From Detective Van Treeck's position, he could see only White's back when White turned toward the patio, which was separated from the front lawn by a wall that stood three or four feet high.

8

A photograph of the wall with officers standing near it and behind it shows that it was roughly bicep-level high. Another photograph shows that the wall encloses a relatively small patio or front-porch area. A large grill and a table within the enclosure further reduce the already limited standing space within the area.

As department policy required, a SWAT team served the warrant. Officers encountered White as he sat in the lawn chair, and they detained him while other officers searched the house and patio area. They found marijuana in three different places: in the barbecue grill on the patio, in the kitchen, and in a bedroom.

Opening the grill's lid, officers discovered a plastic shopping bag. Inside that shopping bag was a clear zip-lock bag containing 224.81 grams (7.92 ounces[5]) of marijuana—almost half a pound. Detective Van Treeck testified that depending on the quality, eight ounces of marijuana would have a street value from $100 to as much as $1,700. In a kitchen cupboard behind a syrup bottle and other food items, officers found a plastic baggie containing 1.11 grams of marijuana (roughly .04 ounces). In a bedroom, the officers uncovered another small baggie, this one containing .85 grams of marijuana, next to a video-game controller on the floor beside the bed. A nearby canvas bag contained documents and receipts with White's name on them.

---

[5]Investigator Nichole Newquist testified that an ounce correlates to 28.35 grams.

Later that day, after the officers concluded the search, Maegan Parker returned to the townhome to secure a broken glass door. During the hour that she was there working on the door, three or four people approached her and asked to speak to "Head," which Parker recognized as White's nickname. Each time she told them that White was not there, they "just hurried up and got in their car and left."

**Discussion**

White argues that no drugs were found on him or within his reach. Although true that no drugs were discovered actually on White, nearly eight ounces of marijuana were found in the patio grill close to where White was sitting. No one other than White was seen on or near the patio. *See Evans*, 202 S.W.3d at 162 n.12 (stating that a defendant's proximity and accessibility to drugs were factors potentially establishing an affirmative link).

The fact that the residence was home to other adults and children is similarly not determinative because a defendant's possession need not be exclusive. *See Hung Phuoc Le*, 479 S.W.3d at 467. Furthermore, none of the other adults or children were seen on the patio near the grill containing the concealed marijuana, and none of the other adults or children were seen shuttling back and forth between the residence, the patio, and vehicles in the parking lot as White was.

And although T.P.'s alleged possession of marijuana also formed a basis for the search warrant, the evidence at trial was that after Parker asked T.P. to

10

leave, she had not seen him at the property since September 5. In addition, Colbert's attempts to visit T.P. later in September and, specifically, on September 25, 2015, failed, thus further undercutting any suggestion that the marijuana might have belonged to T.P. rather than White.

White also suggests that we find it significant that he was not inside the townhouse when the officers conducted the search. But the officers found the vast majority of the marijuana on the patio, which was precisely where Detective Van Treeck had seen White. Additionally, Parker testified that she thought White lived there, and other evidence supported Parker's belief. The officers found documents with White's name on them in the bedroom—a room in which the officers found more marijuana. They found a third bit of marijuana hidden away in a common area—a kitchen cabinet. *See Evans*, 202 S.W.3d at 162 n.12 (stating that whether a defendant owned or had the right to possess the place where the drugs were found was a factor potentially establishing an affirmative link).

White maintains, too, that no evidence showed how the marijuana got into the grill or that he had any control over the grill. Although no direct evidence showed who put the marijuana into the grill, testimony at trial placed a street value on it of as much as $1,700. The jury could reasonably conclude that whoever put it there would not leave it unattended. White was the only person in a position to watch the grill. And because the grill was behind a partial wall, the jury could have reasonably concluded that White could have accessed the grill

11

without being seen. Indeed, Detective Van Treeck testified that White moved around the patio area without Detective Van Treeck's being able to tell what White was doing because of the wall.

Viewing the evidence in the light most favorable to the verdict, the State introduced sufficient evidence linking White to the contraband found at the townhouse. Viewed in the light most favorable to the verdict, the combined and cumulative force of all the evidence, and the reasonable inferences that can be drawn from it, also established that White exercised care, custody, and control over at least four ounces of the contraband found there. *See McDaniel v.* State, No. 05-15-00638-CR, 2016 WL 4260980, at *3 (Tex. App.—Dallas Aug. 11, 2016, pet. ref'd) (mem. op., not designated for publication) (affirmative links sufficient where (1) defendant lived in apartment "off-and-on" for approximately six weeks, sold marijuana out of the apartment, and controlled access to the apartment, and (2) officers found $500 in a coat pocket and smaller bags of marijuana in a clothes hamper in a bedroom). Any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

We overrule White's third point.

## CONFIDENTIAL INFORMER

In White's first point, he argues that the trial court erred by not ordering the State to disclose a material witness—the confidential informer. In the alternative,

White asserts that the trial court erred by not conducting an in-camera hearing under Texas Rule of Evidence 508. Tex. R. Evid. 508.

In White's "Motion to Reveal Confidential Informant," he sought the identity of the confidential informer "whose actions were the basis of the search warrant leading to [White's] arrest," adding that "[White] was arrested upon the execution of a search warrant, and the supporting affidavit for the warrant was based upon the alleged actions of an unnamed Confidential Informant." He claimed that he "need[ed] to know the identity of the Confidential Informant so as to determine the accuracy and/or legality of the search warrant." At the pretrial hearing, where the motion was discussed but not resolved, the following occurred:

> THE COURT: I have a motion to reveal the confidential informant. Is that an evidentiary motion?
>
> [DEFENSE COUNSEL]: Your Honor, that's kind of, I guess, in conjunction with the motion to suppress.
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: We need the confidential informant to make sure he's a reliable confidential informant, etcetera, that he was not operating under any threat or promise of leniency. That's what that motion really goes to.
>
> However, the arrest warrant affidavit in this case, Your Honor, cites the confidential informant as being one that has been used before. It's silent as to exactly how the confidential informant was selected in this case, who he was, or anything else, or why he was used, why this particular one was used.
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: The search warrant is also silent as to what kind of history other than he's been reliable in the past.

13

Texas Rule of Evidence 508 preserves an informer's anonymity except under three narrow circumstances. One of these three exceptions—and the one on which White based his motion—authorizes the trial court to require disclosure of a confidential informer's identity if:

> (i) information from an informer is relied on to establish the legality of the means by which evidence was obtained; and
>
> (ii) the court is not satisfied that the information was received from an informer reasonably believed to be reliable or credible.

Tex. R. Evid. 508(c)(3)(A)(i), (ii).

In his appellate brief, however, White abandons rule 508(c)(3) and adds new arguments based on rule 508(c)(1) (creating an exception if the informer is a witness) and on rule 508(c)(2) (creating an exception if the trial court finds a reasonable probability that the informer can "give testimony necessary to a fair determination of guilt or innocence"). That is, to the extent that Parker was the confidential informer, White now contends that rule 508(c)(1) applies, and to the extent the confidential informer was a material witness, White also now contends that rule 508(c)(2) and its mechanism for in-camera review under rule 508(c)(2)(C) applies.

The complaint made on appeal must comport with the complaint made in the trial court or the alleged error is forfeited. *See Lugo v. State*, 299 S.W.3d 445, 450 (Tex. App.—Fort Worth 2009, pet. ref'd). Because White's complaint

14

on appeal does not comport with his complaint at trial, we hold that his purported error was not preserved.

We overrule White's first point.

## CHARGE ERROR

In point two, White argues that the "trial court reversibly erred by erroneously instructing the jury on the law of the case, not limiting their verdict, and thereby allowed a non-unanimous jury verdict."  White contends here that the evidence was not limited to a single offense because each of the three units of marijuana could have been separately charged, because each unit could have been attributed to different persons, and because each offense could have been committed on a separate date.  White contends that each of the three potential offenses should have been submitted separately in order to ensure unanimity. We disagree.

The charge provided:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 25th day of September, 2015, in Tarrant County, Texas, the Defendant, Lawrence E. White, did intentionally or knowingly possess a usable quantity of marihuana of five pounds or less but more than four ounces, then you will find the Defendant guilty of the offense of possession of marihuana of five pounds or less but more than four ounces.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, or if you are unable to agree, you will next consider whether the Defendant is guilty of the offense of Possession of a usable quantity of Marijuana of less than two ounces.

15

If you find from the evidence beyond a reasonable doubt that on or about the 25th day of September, 2015, in Tarrant County, Texas, the Defendant, Lawrence E. White, did intentionally or knowingly possess a usable quantity of marihuana of less than two ounces, then you will find the Defendant guilty of the offense of possession of a usable quantity of marihuana of less than two ounces.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of Possession of a usable quantity of Marijuana of less than two ounces and say by your verdict "Not Guilty."

. . . .

Any verdict you render must be unanimous.

The State has prosecutorial discretion when deciding what crime to charge. *See Gregg v. Georgia*, 428 U.S. 153, 199, 96 S. Ct. 2909, 2937 (1976) (plurality op.); *Greeley v. State*, No. 03-98-00007-CR, 2000 WL 689769, at *11 (Tex. App.—Austin May 31, 2000, pet. ref'd) (not designated for publication). In exercising its discretion here, the State elected to charge White with possessing all three units collectively on the date of the search.

The State also had the discretion to submit the charged offense and the lesser-included offense. *See Grey v. State*, 298 S.W.3d 644, 650–51 (Tex. Crim. App. 2009). The State left it to the jury to sort out whether White possessed more than four ounces or less than two. If the jury found that White possessed the marijuana found in the grill, that amount alone crossed the four-ounce threshold, and whether White possessed the marijuana in the kitchen and the bedroom then became moot. But if the jury found that White did not possess the

16

marijuana in the grill but did possess the marijuana in either the kitchen or the bedroom (or in both places), White was still guilty of the lesser-included offense. As White correctly notes in his brief, the jury could have viewed the three units of marijuana differently. Regardless of which way the jury went, however, the charge required unanimity on the charged offense (more than four ounces), on the lesser-included offense (less than two ounces), or on a verdict of not guilty.

We overrule White's second point.

## CRUEL AND UNUSUAL PUNISHMENT

In White's fourth point, he contends that his 20-year sentence constitutes cruel and unusual punishment. U.S. Const. amend. VIII. White notes that the maximum punishment for possessing one ounce of marijuana is six months in a county jail. *See* Tex. Health & Safety Code Ann. § 481.121(b)(1) (West 2000); Tex. Penal Code Ann. § 12.22 (West 2011). White essentially argues that for the eight or so ounces he possessed, his punishment should have been closer to four years' incarceration than the twenty years the jury assessed.

To complain on appeal that a sentence violates the United States or Texas Constitution, a defendant must have objected on those grounds when sentenced was imposed. *See Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013); *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd); *Acosta v. State*, 160 S.W.3d 204, 211 (Tex. App.—Fort Worth 2005, no pet.); *see also Lewis v. State*, No. 02-15-00450-CR, 2016 WL 1393466, at *1 (Tex. App.—Fort Worth April 7, 2016, pet. ref'd) (mem. op., not designated for publication).

17

Here, White did not object during the punishment hearing, when sentence was imposed, or in a motion for new trial. Error, if any, has thus not been properly preserved. *See Burt*, 396 S.W.3d at 577; *Kim*, 283 S.W.3d at 475; *Acosta*, 160 S.W.3d at 211; *see also Lewis*, 2016 WL 1393466, at *1.

Further, even if we were to reach the merits, punishment imposed within the statutory limits, as here, is generally not subject to challenge for excessiveness. *See Kim*, 283 S.W.3d at 475. Subject only to a very limited, "exceedingly rare," and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment falling within the legislatively prescribed range and based on the sentencer's informed normative judgment is unassailable on appeal. *Id.* at 475–76.

We overrule White's fourth point.

## CONCLUSION

Having overruled each of White's points, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
ELIZABETH KERR
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and KERR, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 23, 2017

18