

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00406-CR

VINCENT EUGENE VALENCIA                               APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1343710D

----------

## MEMORANDUM OPINION[1]

----------

In one point, Appellant Vincent Eugene Valencia appeals his conviction of causing injury to a child.  *See* Tex. Penal Code Ann. § 22.04(a) (West Supp. 2015).  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Factual Background

Valencia struck his fourteen-year-old daughter Ava[2] when she intervened in an altercation between him and his roommate, Kacey. According to Ava, the two adults, who were intoxicated at the time, were engaged in a mutual argument over a missing lighter. Valencia's eleven-year-old daughter Becky was also present at the time.

According to Ava, as she tried to stop Valencia from dragging Kacey to the apartment balcony, he resisted, and in the process he elbowed her and punched her in the chest. Although Valencia's act appeared to Ava to be intentional—he made eye contact with her prior to delivering the elbow and the punch—Ava also testified that Valencia appeared to be "in shock" and "surprised" immediately after he struck her. Ava testified that he looked at her "like, Whoa, like he didn't mean it," and it appeared to her as though he regretted it afterwards.

Shortly thereafter, Ava and Kacey retreated to the bathroom, shutting, but not locking, the door behind them. Valencia followed them, and as he attempted to open the door, the door knob struck Ava in the ribs as it pushed her against the wall. Ava characterized her getting struck with the door knob as more of an accident than an intentional act on Valencia's part.

Although the police officer who responded to the scene testified that Ava was complaining of pain on the right side of her abdomen that same evening,

---

[2]In accordance with rule 9.8, we refer to children and family members by pseudonyms. Tex. R. App. P. 9.8 cmt.

Ava testified that she did not feel any that night, but she awoke the next morning with pain and a golf ball-sized bruise on her ribs. When her mother observed that Ava was experiencing difficulty in breathing and walking, she took Ava to the hospital to be examined.[3] Ava's medical records documented her "pain score" as an eight, on a scale of one-to-ten. The bruise remained visible for four or five days.

## Discussion

In his sole issue, Valencia complains of jury charge error,[4] specifically, that the trial court erred in failing to limit the definition of intent in the abstract charge instructions to result-of-conduct.

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error did occur, then the degree of harm required for reversal depends on whether the error was preserved. *Id.*

Unpreserved charge error—which occurred in this case when Valencia failed to object to the defective instruction at trial—warrants reversal only when

---

[3]After the police responded to the altercation, Ava and her sister stayed at the apartment with Kacey until their mother picked them up at nine o'clock in the morning.

[4]Valencia did not object to the jury charge at trial.

the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006). The appropriate inquiry for egregious harm is fact-specific and, therefore, must be performed on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious-harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

Section 6.03 of the Texas Penal Code sets out two possible conduct elements for criminal acts: the nature of the conduct and the result of the conduct. In applying those conduct elements to jury charge instructions, the Texas Court of Criminal Appeals has explained,

4

> When "specific acts are criminalized because of their very nature, a culpable mental state must apply to committing the act itself." *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). "On the other hand, unspecified conduct that is criminalized because of its result requires culpability as to that result." *Id*. A trial court errs when it fails to limit the language [in the charge] in regard to the applicable culpable mental states to the appropriate conduct element. *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994), *cert denied*, 133 S.Ct. 536 (2012).

*Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015).

Injury to a child is a result-of-conduct offense, meaning that the actor's conduct must be done with the required culpability to effect the result of bodily injury. *Johnson v. State*, 364 S.W.3d 292, 297 n.37 (Tex. Crim. App. 2012) (citing *Cook v. State*, 884 S.W.2d 485, 489 (Tex. Crim. App. 1994)); *Jefferson v. State*, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 957 (2006). Thus, the State had to prove Valencia *intentionally or knowingly caused bodily injury* to Ava, a child younger than fifteen years of age, by striking her with his hand. *See* Tex. Penal Code Ann. § 22.04(a). And, when charging the jury as to the mental state element, the trial court was required to limit the conduct element to result-of-the-conduct only. *See Price*, 457 S.W.3d at 441.

In its abstract charge instruction, the trial court instructed the jury as follows: "A person acts intentionally, or with intent, with respect to the result of his conduct when it is his conscious objective or desire to *engage in the conduct or* cause the result." [Emphasis added.] Because the court included nature-of-the-conduct language and did not limit the instruction to the result-of-the-conduct element, the trial court incorrectly charged the jury in this portion of the charge.

However, it is not the abstract portion of the charge, but the application paragraph of the charge, that authorizes a conviction. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012) (citing *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996); *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995)). And, here, Valencia concedes that the trial court committed no error with regard to the application paragraph.[5]  Therefore, the trial court's error in the abstract portion of the charge will result in reversible error only if it constitutes "an incorrect or misleading statement of a law that the jury must understand in order to implement the commands of the application paragraph."  *See Crenshaw*, 378 S.W.3d at 466 (citing *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)).

"Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) (citing *Plata*, 926 S.W.2d at 302–03 ("The inclusion of a

---

[5]The application paragraph charged the jury:

> Now, if you find from the evidence beyond a reasonable doubt that the Defendant, Vincent Eugene Valencia, in the County of Tarrant and State of Texas, on or about the 29th day of September, 2013, did intentionally or knowingly cause bodily injury to [Ava], a child younger than 15 years of age by striking her with his hand, then you will find the Defendant guilty of injury of a child as charged in the indictment.

6

merely superfluous abstraction . . . never produces reversible error in the court's charge because it has no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs.")), *cert. denied*, 529 U.S. 1102 (2000). The appellant in *Medina* was charged with murder, a result-of-conduct crime, but the trial court erroneously defined "knowingly" only with reference to the nature of the conduct.[6] *Id.* at 639. Any resulting harm was not egregious, however, because the application paragraph "repeatedly and consistently instructed the jury that they must believe beyond a reasonable doubt that appellant 'intentionally or knowingly caused the death' before they could find him guilty." *Id.* at 640.

Likewise, in *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995), *cert. denied*, 517 U.S. 1106 (1996), the appellant was charged with capital murder, which is a result-of-conduct offense which also includes nature of circumstances and/or nature of conduct elements depending upon the underlying crime elevating it to capital murder. In *Patrick*, the trial court erred in not limiting the nature of conduct and/or nature of circumstances language to proving the conduct element of the underlying offense of burglary. *Id.* at 492. However, the court of criminal appeals held that this did not result in egregious harm "because the facts, as applied to the law in the application paragraph, pointed the jury to

---

[6]The definition read as follows: "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." *Medina*, 7 S.W.3d at 639.

7

the appropriate portion of the definitions." *Id.* at 493 (citing *Hughes v. State*, 897

S.W.2d 285, 296 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1112 (1995)).

Valencia argues that the correctly-worded application paragraph does not

prevent a finding of egregious harm, relying upon the unpublished opinion of

*Dougherty v. State*, No. PD-1411-05, 2006 WL 475802 (Tex. Crim. App. 2006)

(per curiam) (not designated for publication). *Dougherty* held that an appellate

court improperly limited its harm analysis when it determined that the abstract

instruction did not cause egregious harm because the application paragraph was

correct without consideration of the remaining factors discussed in *Almanza*. *Id.*

at *1. As an unpublished opinion, *Dougherty* has no precedential value, but out

of an abundance of caution we will address Valencia's arguments regarding the

*Almanza* factors.[7] *See* Tex. R. App. P. 47.7.

---

[7]At least six of our sister courts have taken a similar approach in analyzing all four *Almanza* factors out of an abundance of caution in light of the *Dougherty* decision. *See Cosby v. State*, No. 05-13-01072-CR, 2015 WL 2438766, at *4–5 (Tex. App.—Dallas May 21, 2015, no pet.) (mem. op., not designated for publication); *Johnson v. State*, No. 01-13-00104-CR, 2014 WL 1004401, at *5–6 (Tex. App.—Houston [1st Dist.] Mar. 13, 2014, pet. ref'd) (mem. op., not designated for publication); *In re I.L.*, 389 S.W.3d 445, 454 n.6 (Tex. App.—El Paso 2012, no pet.); *Matus v. State*, No. 10-08-00149-CR, 2011 WL 1166383, *7–8 (Tex. App.—Waco Mar. 30, 2011, pet. ref'd) (mem. op., not designated for publication); *Chaney v. State*, 314 S.W.3d 561 (Tex. App.—Amarillo 2010, pet. ref'd); *Silva v. State*, No. 14-06-00207-CR, 2007 WL 1745603, at *6 n.2 (Tex. App.—Houston [14th Dist.] June 19, 2007, no pet.) (mem. op., not designated for publication). But the court of criminal appeals has also refused review in at least one case that did not analyze the remaining *Almanza* factors after holding that any jury charge error was harmless in light of the correctly-worded application paragraph. *Newman v. State*, No. 04-11-00747-CR, 2013 WL 3871053, at *4 (Tex. App.—San Antonio July 24, 2013, pet. ref'd) (mem. op., not designated for publication).

*Almanza* holds that "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." 686 S.W.2d at 171. With regard to the first factor, we have already discussed that the application paragraph of the jury charge correctly defines and ties "intentionally" to the result of Valencia's conduct.

As to the second factor, the state of the evidence, the jury heard testimony that Valencia looked at Ava prior to elbowing her and punching her in the chest. Ava also testified that she had trouble breathing and walking the next day and went to the hospital for treatment. And while Ava did testify that the punch did not hurt, that he only punched her once, and that he appeared "shocked" and "surprised" after he did it, Ava also testified that, from her vantage point, the hit was intentional. Additionally, Ava thought that the punch did not hurt initially because she was in shock at the time. And a responding police officer testified that Ava complained of pain on her right side that night.

Valencia argues that the State's questioning of Ava of whether she felt Valencia intentionally hit her "contributed to the danger that the jury misunderstood the intent inquiry." But specific intent is hardly ever provable by direct evidence, and may be inferred from acts, words, or conduct of the accused. *Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972) (citing *Kincaid v. State*, 198 S.W.2d 899, 900 (1946)). It may also be inferred from the

9

extent of the injuries and the relative size and strength of the parties. *Patrick*, 906 S.W.2d at 487. Whether Valencia looked at or otherwise acknowledged Ava when he struck her in the ribs is appropriate evidence of Valencia's intent, and allows the jury to infer that he intended to injure Ava. *See, e.g.*, *id.* at 487; *Villarreal v. State*, No. 13-10-00396-CR, 2012 WL 1142885, *8 (Tex. App.—Corpus Christi April 5, 2012, no pet.) (mem. op., not designated for publication) ("It strains common sense to believe a jury would have found appellant intended not to feed or care for the child but failed to find she thereby intended to, or knew that it would, cause him serious bodily injury.").

The third *Almanza* factor to be considered is the argument of counsel. *Almanza*, 686 S.W.2d at 171. Valencia argues that the State contributed to the harm by stating in its closing, "When you punch a child in the ribs, it's an assault. Okay? Common sense. When you punch a child with a closed fist, looking at her intentionally to try to prevent her from interfering with your assault on your roommate, that's an assault. That's an injury to a child." Valencia's argument, however, minimizes his own counsel's closing argument, which clarified that the jury must find that he intended to cause bodily injury:

> On the one hand, you know, oh, intentional, maybe, but he looked surprised. When he turned around, he looked surprised. Is that intentional? Because he stopped. He stopped immediately when he realized that that was her. This is a chaotic situation. I'm not up here saying that Vincent Valencia wasn't acting like a total ass that night. I'm not up here telling you that. I'm up here telling you that he's not guilty of intentionally and knowingly causing bodily injury.

10

. . . .

And we're going to ask you for a finding of not guilty because we believe that the Prosecutor did not prove beyond all reasonable doubt that this—that [Ava] was caused bodily injury knowingly and intentionally by her father.

. . . .

They have to prove not just that he caused bodily injury to her, but that he did it intentionally and knowingly with his hand okay, not his elbow, not a door knob.

Thus, defense counsel's argument directed the jury to the correct standard of "intentionally" to be applied by the jury, preventing egregious harm. *See Villarreal*, 2012 WL 1142885 at *8 (holding that defense counsel's argument "steered the jury to the correct mental state for a result-oriented offense").

Finally, *Almanza* directs us to look to "any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. Valencia points us to notes sent by the jury during deliberations. The notes read as follows:

Jury Note No. 1:

Transcript of [Ava]'s Testimony – We need details from [Ava]'s testimony regarding her wording of her dad's look and the punch. She stated dad looked and then punched, [and] mentioned his intent. We dispute her actual words used in her description of the incident.

Jury Note No. 2:

(1) Medical Records

(2) Police Reports

11

(3) Pictures of [Ava]

Jury Note No. 3:

> Testimony from [Ava] . . .
> At what point did he look at her prior or after he hit her[?]
> Did he elbow her th[e]n punch her at same time or did he elbow her th[e]n look at her th[e]n punch her[?]

Jury Note No. 4:

> Clarification on 4 & 5 of Page #2[8]

Unnumbered Jury Note:

> We need clarification on the # of times the father "look" up prior to or after the hit.

Unnumbered Jury Note:

> We have a dispute over testimony. We need details regarding the wording used by Ava. She stated dad looked and then punched her. She said he did it intentionally. The dispute is her wording of the incident.

The jury also sent three notes that they could not reach a verdict.

Valencia argues that these jury notes "provide empirical evidence" that the erroneous definition caused the jury to "struggle to agree on [Valencia]'s intent." While jury notes may provide a glimpse into the confidential discussions and

---

[8]There is no additional guidance in the record as to what this note is referring. While paragraph 4 on page 2 of the jury charge contains the abstract definitions of "intentionally" and "knowingly," paragraph 5 instructs the jury on the presumption of innocence afforded to the defendant and the prosecution's duty to prove guilt beyond all possible doubt. Without any further context in the record, we cannot speculate as to the meaning of this note. *See, e.g.*, *Alonzo v. State*, 328 S.W.3d 19, 27 (Tex. App.—Corpus Christi 2010), *rev'd on other grounds*, 353 S.W.3d 778 (Tex. Crim. App. 2011).

12

interplay which occurs among the jurors behind closed doors, we must exercise caution in presuming that we can glean from these notes which matters weighed heavily on individual jurors or the entire body during the deliberative process. *See Alonzo*, 328 S.W.3d at 27 (stating, "we 'cannot endeavor to surmise a jury's intent from the jury's notes'") (quoting *McAndrew v. State*, No. 12-03-00297-CR, 2005 WL 674195, at *2 (Tex. App.—Tyler Mar. 23, 2005, pet. ref'd) (mem. op., not designated for publication)), *rev'd on other grounds*, 353 S.W.3d 778 (Tex. Crim. App. 2011); *see also Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex. 1995) ("The jury's reasons for reaching a particular verdict are irrelevant, at least in the absence of some overt act of misconduct."). While these notes do indicate that the jury sought clarification both as to the evidence and the law on matters related to intent, we are not persuaded that the jury's notes necessarily indicate that they "struggled to agree on [Valencia]'s intent." Nor do they signify that egregious harm occurred as a result of the erroneous abstract instruction contained in the jury charge.

Because the application instruction correctly instructs the jury by limiting the conduct element to result-of-conduct only, and applying the remaining *Almanza* factors, we conclude that Valencia did not suffer egregious harm. *See, e.g.*, *Medina*, 7 S.W.3d at 640; *Almanza*, 686 S.W.2d at 171. We therefore overrule Valencia's sole issue.

13

## Conclusion

Having overruled Valencia's sole issue, we affirm the judgment of the trial court.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 3, 2015